Mike **PERKINS**, Appellant,

v.

**DISTRICT OF COLUMBIA BOARD OF ZONING ADJUSTMENT,** Respondent.

Nos. 96–AA–30, 97–AA–772.

District of Columbia Court of Appeals.

Argued Feb. 17, 2000.
Decided Dec. 31, 2002.

Mark G. Griffin, Washington, DC, for petitioner.

James C. McKay, Jr., Assistant Corporation Counsel, and Jo Anne Robinson, Interim Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel, were on the brief, for respondent.

Before WAGNER, Chief Judge, and FARRELL and REID, Associate Judges.

WAGNER, Chief Judge:

In these consolidated appeals, petitioner, Mike Perkins, petitions for review of a decision and orders of the District of Columbia Board of Zoning Adjustment (BZA) revoking his certificate of occupancy for premises on which he operated a waste transfer station. He argues that the BZA erred in concluding that his business operations do not conform to the use permitted by his certificate of occupancy. We agree and reverse.

## I.

### A. *Factual Background*

Perkins applied for a certificate of occupancy to operate a business at 2160 Queens Chapel Road, Northeast. The Department of Consumer and Regulatory Affairs (DCRA) issued Perkins a certificate of occupancy listing the following purpose:[1]

---

1. The business is located in a Commercial– Light Manufacturing (C–M) district. C–M

Light Manufacturing, Processing, Fabricating, & Warehousing of Steel Products and Office and Retail Construction Industrial Supplies; All Material Non–Hazardous; Not sexually oriented.

Perkins had applied for the certificate of occupancy in almost identical language.[2] After receiving the certificate of occupancy, Perkins commenced operating a waste transfer facility at the premises. On March 21, 1994, the DCRA issued Perkins a "Notice of Proposed Revocation" of the certificate of occupancy, alleging that his use of the premises was not in conformity with the certificate issued.

### B. Proceedings Before the Office of Adjudication

A hearing was held before the DCRA's Office of Adjudication (OAD). The Administrative Law Judge (ALJ) assigned to the case made findings of fact and dismissed the DCRA's Notice of Proposed Revocation with prejudice, having concluded that Perkins' use of the premises was within the parameters of the certificate of occupancy. The ALJ found that Perkins' business consisted of compacting and deodorizing non-hazardous waste brought in by private contractors which was transferred to 18–wheel tractor trailers for transport to a landfill in Virginia within 12 hours of arrival. While there is no manufacturing of steel at the facility, some steel products were left by the previous owner, and there are some steel products in the waste material. In his application, Perkins listed as the nature of the business:

Light manufacturing, processing, Fabricating, warehousing of steel products and office and retail construction Industrial supplies, All material no[n]-hazardous.[3]

At the time Perkins applied for his certificate of occupancy, there was no zoning category for trash transfer facilities and no regulations which addressed specifically these kinds of facilities. There were seven privately owned transfer facilities in the District of Columbia (including Perkins') at the time for which the purposes listed on the certificates of occupancy varied widely.[4] The ALJ for the OAD determined

---

districts "shall be intended to provide sites for heavy commercial and light manufacturing activities employing large numbers of people and requiring some heavy machinery under controls that would minimize any adverse effect on other nearby, more restrictive districts." 11 DCMR § 800.1 (1986). Heavy truck traffic and loading and unloading is characteristic of C–M districts. 11 DCMR § 800.2 (1986).

2. Perkins' application listed his business purpose as:
 Light manufacturing, processing, Fabricating, warehousing of steel products and office and retail construction Industrial supplies, All material no[n]-hazardous.

3. The ALJ found that the certificate of occupancy issued to the previous owner of the building in 1992 listed the purpose as:
 Office/Warehouse & Retail of Contractor, Industrial Supplies[.] Not sexually oriented.

On the application, the previous owner proposed the following purpose for the property:
[L]ight manufacturing, processing, fabricating and warehousing of steel products and office and retail of contractor [sic], industrial supplies.

In an earlier certificate of occupancy, issued in either 1965 or 1953, the purpose was:
Light manufacturing, processing, fabricating and warehousing of steel products and office & retail of ammunition limited to 2500 Sq. Ft.

4. These included the following:
 ABC Salvage Corp.['s] listed purpose is "Junk Storage Area;" Consolidated Waste Industries, Inc./BFI['s] listed purpose is "Sorting & Separating of Recyclable Materials Industrial Processing;" Eastern TransWaste of Maryland, Inc.['s] listed purpose is "Trash Hauling & Parking;" Rodgers Brothers Custodial Service, Inc. has two facilities[.][O]ne has its listed purpose as

that the uses permitted by Perkins' certificate of occupancy conformed with uses permitted as a matter of right under the applicable municipal regulation, 11 DCMR § 801.7(j) (1986). The ALJ also concluded that the fact that Perkins did not describe his business activity as a "trash transfer station" is not in issue and that the issue was whether "the use of [Perkins'] property as a solid waste dumping site does not conform with the use permitted by the certificate of occupancy No. B 168010."

In analyzing this issue, the ALJ considered the language describing the permitted use in the certificate of occupancy which read in pertinent part:

> Light Manufacturing, Processing, Fabricating, & Warehousing Steel Products and Office and Retail Construction Industrial Supplies; All Material Non–Hazardous; Not sexually oriented.

Relying on the rule of statutory construction known as the "Rule of Last Antecedent,"[5] the ALJ rejected the District's argument that the term "processing" modified the term "steel," thereby limiting the certificate of occupancy to processing steel products, not waste. Weighing in favor of this conclusion, the ALJ cited the "broad descriptions of activities permitted in C–M districts." The

ALJ also considered the dictionary definition of "processing" and concluded that the "series of events at the Facility of condensing and deodorizing the waste from the small trucks to the 18–wheel long-haul tractors meets the definition of 'processing.' "[6]

### C. *Appeal to the Board of Zoning Adjustment*

The District, on behalf of the Department of Public Works, appealed the OAD's decision to the BZA. The District stated that the appeal was being brought pursuant to D.C.Code § 5–424(f) (1994 Supp.), which provides for appeals to be "taken by ... any officer or department of the government of the District of Columbia ... affected, by any decision of the [DCRA] ... based in whole or in part upon any zoning regulation."[7] In an order of December 12, 1995, the BZA defined the issue on appeal to be "whether the ALJ erred in concluding that the use at the subject site complies with the uses permitted in the [certificate of occupancy]."

The BZA summarized the evidence of record concerning how Perkins secured the certificate of occupancy. The opinion stated that Perkins and his associate, intending to engage in a business involving a solid waste transfer station, searched the

"Temporary Storage all materials are non Hazardous[;]" the other has "Recycling Bulk Waste Paper[;]" James L. Taylor Trash Removal Contractor, Inc.'s purpose listed in its original [certificate of occupancy] in 1967 was "Warehouse General Office Building Home Improvement Office."

5. The Rule of Last Antecedent states that "ordinarily, qualifying phrases are to be applied to the words or phrase immediately preceding them, and not to others more remote." *District of Columbia v. Smith*, 329 A.2d 128, 130 (D.C.1974).

6. Citing to 11 DCMR § 199.2(g) (1992), which permits resort to Webster's Unabridged

Dictionary to define those terms left undefined in the regulations, the OAD found that the term "processing" "signifie[d] a method of performing operations upon an item."

7. Perkins filed a motion to dismiss on the grounds that this was a contested case for which appeals must be made to the District of Columbia Court of Appeals pursuant to D.C.Code § 1–1510(a) (1994). The BZA determined that it had appellate jurisdiction pursuant to D.C.Code § 5–424(f) (1994) and 11 DCMR 3105.1 (1986). The BZA considered that the District was seeking review of a decision of the ALJ in the Office of Adjudication concerning an issue arising out of the Zoning Regulations.

records of the DCRA for a property with a certificate of occupancy suitable for their purposes. Having located the subject premises, which had a certificate of occupancy with the word "processing" among its purposes, they settled on the subject property.[8] After considering the arguments of the parties, and after hearing from other interested parties,[9] the BZA listed as factual findings that:

1. [Perkins'] proposed use under Subsection 801.7(j) was also subject to the provisions of Sections 804 and 805 [of the zoning regulations];[10]

2. There is no evidence that [Perkins] submitted information to DCRA to address the external effects issues raised in the Zoning Regulations.

3. Proper procedures were not followed in issuing the subject certificate of occupancy.

4. The ALJ did not consider these procedures in deciding not to revoke the certificate of occupancy.

Therefore, the BZA concluded that the ALJ's decision was in error and that the certificate of occupancy should have been revoked. The BZA determined that Perkins had not submitted the appropriate documentation regarding external effects when he submitted his application and that the ALJ had failed to examine whether the process had been complied with. Accordingly, the BZA reversed the ALJ's decision.

On December 26, 1995, Perkins filed a request for reconsideration. In support of the request, Perkins argued that the issue regarding whether he complied with the external effects provision in the regulations was not raised in the Notice of Proposed Revocation and was not an issue before the OAD. Therefore, Perkins contended that the BZA "acted beyond the scope of its authority in addressing it." In addition, Perkins argued that 11 DCMR § 805 (1986) only applied to applications for a permit, rather than applications for certificates of occupancy. In its Memorandum in Opposition to the Request for Reconsideration, the District did not oppose the request "insofar as it would lead to a clarification of the Board's decision in this matter." While arguing for affirmance, the District stated that:

[t]he Board need not here rule on whether as a matter of fact [Perkins] complied with the rules governing the standards of external effects. The Board need only rule that the ALJ's interpretation below was flawed, for reasons of grammar and logic and because

---

8. An earlier certificate of occupancy for the premises permitted it to be used for "light manufacturing, processing, fabricating and warehousing of steel products and office & retail or ammunition ...." A later certificate listed "office/warehouse & retail of Contractor, Industrial Supplies[.]"

9. The late Harry Thomas, Sr., then a member of the D.C. Council, the Chairman of the Advisory Neighborhood Commission 5A, the Chairman of the Woodridge Association, and two residents in the neighborhood near the facility testified at the May 17, 1995 hearing.

10. "Processing" is allowed as a matter of right in C–M districts pursuant to 11 DCMR 801.7(j) (1986), "subject to the standards of

external effects set forth in subsection 804." In turn, subsection 804.1 provides that:

all uses established in a C–M District under authority of Subsection 801.7 ... shall be operated so as to comply with the standards of external effects set forth in this section. Subsection 805.1(b) provides that applications for a use under subsection 801.7 requires a description of any operations that would be affected by the standards of external effects as provided in Subsection 804. Section 805.2 provides for the applicant to submit such other information necessary to determine compliance with the provisions of subsection 804.

the District's regulatory scheme so demonstrates.

Upon reconsideration, the BZA adhered to its opinion that the OAD erred in failing to revoke the certificate of occupancy due to noncompliance with the process. The BZA clarified its order as follows:

> The Board concludes that the decision of the ALJ is erroneous for the following reasons: The [certificate of occupancy] at issue allows for "light manufacturing, processing, fabricating and warehousing *of steel products* ..." The ALJ's interpretation effectively allows for warehousing of *steel products,* but light manufacturing, processing and fabricating of anything the operator wishes to handle, simply because the desired use is not specifically delineated in the Zoning Regulations. The Board believes that this interpretation is not logical, that the words "steel products" clearly apply to each of [the] activities listed, not just warehousing.

(Emphasis added.)

## II.

Perkins argues that the BZA erred in concluding that his actual use of the premises did not conform to the use permitted by his certificate of occupancy. He contends that the BZA reached a decision contrary to that of the OAD, which found his use permissible, because the BZA failed to interpret properly the language in the certificate of occupancy. Perkins argues that application of the Rule of the Last Antecedent and applicable case law leads to an interpretation supporting his position. The District responds that the referenced rule is one of general statutory construction which is subordinate to other evidence of the intent of the language. It contends that the rule should be disregarded in this case because the BZA's interpretation is reasonable, consistent with the natural reading and syntax of the language and with the Zoning Regulations.

The Rule of Last Antecedent provides that "[o]rdinarily, qualifying phrases are to be applied to the words or phrase immediately preceding and are not to be construed as extending to others more remote." *United States v. Pritchett,* 470 F.2d 455, 459 (D.C.Cir.1972); *see also District of Columbia v. Smith,* 329 A.2d 128, 130 (D.C.1974). The rule is not inflexible, and it is not applied if the context of the language in question suggests a different meaning. *See Pritchett,* 470 F.2d at 459. Here, the language in the certificate of occupancy describing the permitted uses of the property states:

> Light Manufacturing, Processing, Fabricating, & Warehousing of Steel Products and Office and Retail Construction Industrial Supplies; All Material Non-Hazardous; Not sexually oriented.

The BZA took the position that the phrase "of Steel Products and Office and Retail Construction Industrial Supplies" modifies each of the four antecedents (*i.e.,* manufacturing, processing, fabricating and warehousing). Thus, it argues that each of these activities had to be related to steel products and office and retail construction industrial supplies, which Perkins' operations did not. Applying the Rule of Last Antecedent, Perkins argues that "steel products" only modifies "warehousing," not "processing" or the more remote words. *See Pritchett,* 470 F.2d at 459. He contends that the other enumerated activities, including processing, would not be understood as being limited to steel products.

In *Pritchett,* the appellant, an off-duty corrections guard, was convicted for carrying a dangerous weapon (pistol) (CDW) in violation of D.C.Code § 22–3204 (1981). 470 F.2d at 455. This prohibition in the

CDW statute is subject to exceptions for "marshals, sheriff, prison or jail wardens, or their deputies, policemen or other duly appointed law-enforcement officers, or to members of the Army, Navy, or Marine Corps of the United States or of the National Guard or Organized Reserves *when on duty* . . . ." *Id.* at 456 (citing D.C.Code § 22–3205 (1981) (emphasis added)). While conceding that appellant was covered as a warden's deputy, the government argued that the exception was restricted by the "when on duty" requirement, and therefore, Pritchett was not covered. *Id.* It contended that these words modified the members of all groups identified, and not just the conduct of the preceding military groups, as Pritchett argued. *Id.* In concluding that the "when on duty" language was applicable only to the antecedent group and not to the others more remote, the D.C. Circuit relied upon the Rule of Last Antecedent, having concluded "that the application of the rule would be in keeping with the intention expressed in this statute." *Id.* at 459. The court was persuaded that if the phrase at issue was intended to modify the earlier portion of the statute, it could have omitted the word "or," which preceded the "Army, Navy or Marine Corps" or placed a comma preceding the phrase. *Id.* Other portions of the statute also indicated distinctions between the various groups, depending on their duty status, thus evidencing an intent to distinguish among them. *See id.*

*Pritchett* indicates that the placement of the qualifying phrase is not all controlling, but consideration must also be given to the context and intent of the language. *See Pritchett, supra,* 470 F.2d at 459. This court made that point in *District of Columbia v. Smith,* 329 A.2d 128, 130 (D.C. 1974). In *Smith,* this court was interpreting a statute delineating the limits of the prosecutorial authority of the Corporation Counsel under a statute which then authorized the Corporation Counsel to prosecute

> violations of all police or municipal ordinances or regulations and for violations of all penal statutes in the nature of police or municipal regulations, where the maximum punishment is a *fine only, or imprisonment not exceeding one year* . . . .

329 A.2d at 129 (quoting D.C.Code § 23–101(a)(1973)(emphasis in original)). Except as otherwise provided by law, all other criminal prosecutions were to be prosecuted by the United States Attorney. *Id.* The regulation under which the offense was being prosecuted called for a fine of not more than $300 or imprisonment for not more than ten days or both. *Id.* The defendants challenged the authority of the Corporation Counsel on the grounds that the absence of "or both" from § 23–101(a) meant that a regulation punishable by both a fine and jail time could not be prosecuted by the Corporation Counsel. *Id.* This court disagreed, concluding that the statute gave prosecutorial authority to the Corporation Counsel as to all municipal ordinances and regulations, regardless of potential penalty. In reaching that conclusion, this court stated that the "fine only or imprisonment phrase" modified only the "penal statute" phrase, consistent with the Rule of the Last Antecedent. *Id.* at 130. Pertinent to our review here, this court also observed that the rule is not inflexible and considered that the context, legislative history and long-established application of the statute supported the conclusion.[11]

---

11. The court noted at the outset that any other interpretation would have anomalous results because: (1) the Council could not enact legislation which related to the duties and powers of the United States Attorney; and (2) given the Council's power to pass ordinances and regulations, it must also be

The District argues that the Rule of the Last Antecedent should be disregarded if contrary to the natural meaning of the language or contrary to legislative intent. The Supreme Court has stated that "[w]hen several words are followed by a clause which is applicable as much to the first and other words as to the last, the natural construction of the language demands that the clause be read as applicable to all." *Porto Rico Ry., Light & Power Co. v. Mor*, 253 U.S. 345, 348, 40 S.Ct. 516, 64 L.Ed. 944 (1920). In *Porto Rico Ry.*, the court was construing a provision of a statute limiting a district court's jurisdiction in cases involving individuals domiciled in Puerto Rico. *Id.* at 345–46, 40 S.Ct. 516. The provision of the statute, which provided a civil government for Puerto Rico, read in pertinent part:

> [s]aid district court shall have jurisdiction of all controversies where all of the parties on either side of the controversy are citizens or subjects of a foreign State or States, or citizens of a State, Territory, or District of the United States *not domiciled in Porto Rico*, wherein the amount in dispute exceeds . . . $3000.

*Id.* at 346, 40 S.Ct. 516 (emphasis added.) The question presented was whether the italicized language applied to American citizens as well as to aliens. The Supreme Court held that the clause "not domiciled in Porto Rico" should be read to apply to both aliens and American citizens. *Id.* In reaching that conclusion, the Court observed that if the clause were doubtful, the construction should be given which effectuates the legislative purpose. *Id.* at 348, 40 S.Ct. 516 (citations omitted). It concluded that Congress "could not have intended to give the District Court jurisdiction of any controversy to which a domiciled alien is a party while denying under similar circumstances jurisdiction where a domiciled American is a party."[12] *Id.* at 349, 40 S.Ct. 516.

Perkins does not challenge that the application of the Rule of the Last Antecedent is dependent upon the context of the statute in question and its legislative history. He contends, however, that there is no legislative history or evidence of intent in the present case to argue against the application of the Rule. He contends that the primary evidence of intent applicable here comes from the BZA itself, as reflected in case law. Perkins relies primarily on *Concerned Citizens of Brentwood v. District of Columbia Bd. of Zoning Adjustment*, 634 A.2d 1234 (D.C.1993).

In *Concerned Citizens*, the applicant sought a permit to construct and operate a facility designed "to collect, sort, compact, and transport recyclable waste materials (glass, paper, plastic, steel, and aluminum)" in a C–M district.[13] *Id.* at 1236–37. After filing the application, the Zoning Administrator informed the applicant that the

able to prescribe penalties in excess of ten days. *Smith, supra,* 329 A.2d at 130.

**12.** Mor was a subject of Spain who brought an action for money damages in the United States District Court of Puerto Rico against Porto Rico Railway, Light and Power Company, a corporation with its principal place of business in Puerto Rico. He recovered judgment, and the case came before the First Circuit which certified the jurisdictional question to the Supreme Court. *Porto Rico Ry., supra,* 253 U.S. at 345–46, 40 S.Ct. 516.

**13.** The proposed operation was described in the application as a "consolidated industrial processing center" which would entail the following activities:

> (1) collection of cans, bottles, plastic containers, and paper; (2) sorting and segregating these materials; (3) compacting the segregated materials into bales; and (4) loading and transporting those bales for sale to recycling facilities outside the District of Columbia.

*Concerned Citizens, supra,* 634 A.2d at 1236.

proposed use was not permitted as of right, and the applicant sought a variance from the BZA. *Id.* at 1237 & n. 4 (citing D.C.Code § 5–424(g) (1988) (authorizing the BZA to grant variances from the zoning regulations in certain circumstances)). Following a hearing on the variance request, the BZA asked the Zoning Administrator to reconsider the finding that the proposed use required a variance in light of the permitted uses as of right in C–M districts. *Id.* The Zoning Administrator adhered to his earlier position, and the applicant renewed the appeal to the BZA. *Id.* The BZA issued an order concluding that the proposed use was permitted as of right in C–M districts. *Id.* Specifically, the BZA cited section 801.7(j) of the regulations which permits as of right "[a]ny light manufacturing, processing, fabricating, or repair establishment." *Id.* The term "processing" is not defined in the regulations. Relying on the dictionary definition of the term "processing" as provided for in its regulations, the BZA concluded that the applicant's activities fell within the definition.[14] *See id.* This court agreed, and affirmed the BZA's decision. *Id.* at 1242–43.

In determining that the activities at the subject site were permissible under the regulations, the OAD followed the same reasoning used in *Concerned Citizens.* The OAD considered that non-hazardous commercial and residential waste was hauled into the facility and loaded onto a concrete hanger to be weighed. The waste was then deodorized, compacted and transferred to a tractor-trailer for transport to a landfill outside the district. Relying on the dictionary definition of "processing," the OAD found that the activities at Perkins' business property constituted processing within the ordinary meaning of the word.[15] Therefore, because the proposed use was generally consistent with the broad description of activities permitted in C–M districts under the zoning regulations at the time, the BZA's attempt to restrict that activity to the processing of steel products only is inconsistent with the regulations. As found in the OAD decision, the zoning regulations did not recognize waste transfer facilities, nor was there such a zoning category to choose from when Perkins applied for his certificate of occupancy. None of the certificates of occupancy issued for the other six waste transfer facilities indicated that the use was for "waste transfer" or "trash transfer."

Considering these circumstances, we conclude that the construction that the District seeks to place on the certificate of occupancy here is contrary to the context and established application of the regulation.[16] The Rule of Last Antecedent and the context and established application of the regulation support the interpretation that the processing use permitted by the certificate of occupancy is not limited to steel products. *See Smith, supra,* 329

---

14. Where there is no definition for a term in the regulation, another regulation directs the BZA to refer to *Webster's Unabridged Dictionary* for the applicable definition. *Concerned Citizens, supra,* 634 A.2d at 1242 & n. 18 (citing 11 DCMR § 199–2(g), published in Title 11 Errata List, 39 D.C.Reg. 4204 (1992) (other citation omitted)).

15. We do not view the District's brief as challenging that Perkins' activities consist of processing.

16. The dissenting opinion concludes that the analysis should not be focused, as we have done in this opinion, upon the certificate of occupancy which was issued to Perkins. However, the issue before the ALJ and the BZA was set forth in those terms. The BZA stated that "[t]he issue in the subject appeal is whether the ALJ erred in concluding that the use at the subject site complies with the uses permitted in the C[ertificate] of O[ccupancy]".

A.2d at 130. There is no legislative history or evidence of intent which dictates otherwise.

 We are not unmindful that on appeal, "[t]his court defers to the interpretation by the agency of its own regulations 'unless plainly erroneous or inconsistent with the regulations.'" *1330 Connecticut Ave., Inc. v. District of Columbia Zoning Comm'n*, 669 A.2d 708, 714 (D.C.1995) (citations omitted). Therefore, "[a]bsent some compelling indication that the interpretation is erroneous, we are bound by the agency's construction of its own regulations." *Id.* (citations omitted). In the District, "the Zoning Commission promulgates the regulations, but it is the responsibility of the BZA to interpret the regulations adopted by the Commission." *Keefe Co. v. District of Columbia Bd. of Zoning Adjustment*, 409 A.2d 624, 625 (D.C.1979) (citation omitted). Here, however, the BZA's interpretations of its regulations are inconsistent in a material respect. Moreover, the court reviews legal questions essentially *de novo*. *Concerned Citizens, supra*, 634 A.2d at 1240 & n. 12 (citations omitted).

For the foregoing reasons, the order of the BZA is

*Reversed.*

FARRELL, Associate Judge, dissenting:

The majority opinion, I believe, confuses the occupancy permit Perkins filed for and received with one he could have applied for and might (though not necessarily would) have received. It is true that "processing" as permitted in C–M districts has been defined broadly by the BZA. *See Concerned Citizens of Brentwood v. District of Columbia Bd. of Zoning Adjustment*, 634 A.2d 1234, 1242–43 (D.C.1993). Thus, in much the same way as did the applicant in *Brentwood*, Perkins could have sought permission to operate—as a form of processing—his business of compacting, deodorizing, and transferring non-hazardous waste for shipment.[1] At the same time, permission to engage in processing and any other of the uses permitted in C–M districts is "subject to the standards of external effects set forth in [11 DCMR] § 804," 11 DCMR § 801.7 (1986), including, for example, a prohibition on "[t]he emission of any odorous gases or other odorous matter." *Id.* § 804.9. So an application to process trash material would have subjected Perkins' proposal to examination for potential environmental impacts of that sort.

Perkins, however, did not apply for a permit to process non-hazardous waste. Admitting at the hearing that "we were going to stay away from such words as transfer station, waste, recyclables, anything that would raise a red flag with the government," he applied for and received a permit to conduct the following business:

> Light Manufacturing, Processing, Fabricating, & Warehousing of Steel Products and Office and Retail Construction Industrial Supplies; All Material Non–Hazardous; Not sexually oriented.

He has never contended that "Steel Products and Office and Retail Construction Industrial Supplies" were to be the exclusive, or even a significant, part of the material he would "process" at the site. Instead, he reads these grammatical objects in the permit as qualifying only the verb form "Warehousing," and the permission to conduct "Processing" as limited only by the exclusion of hazardous materials. The BZA rejected this reading, and

---

1. The applicant in *Brentwood* applied for permits "to allow construction and operation of a facility designed to collect, sort, compact, and transport recyclable waste materials . . . ." 634 A.2d at 1236.

unlike the court, I see no basis on which to withhold our normal deference to interpretations of that kind by the agency possessing expertise.

Both textually and as a matter of common sense, the permit appears to limit the named activities (manufacturing, etc.) to the two classes of objects described. If Perkins is right that warehousing alone among those activities is limited to steel products and industrial supplies, one would expect the permit to have made that distinction, perhaps by stating:

> Light Manufacturing, Processing, *or* Fabricating; & Warehousing of Steel Products and Office and Retail Construction Supplies . . . .

Instead, the direct objects follow a succession of verbs each naming an activity to which the objects naturally relate. Furthermore, it taxes common sense to read the permit as allowing the manufacture, processing, or fabricating of *anything* nonhazardous (all of which would entail some storage), but warehousing only of the materials specified.[2]

The "rule of the last antecedent," discussed at length by the majority, does not assist Perkins because "[w]hen several words are followed by a clause ... as applicable as much to the first and other words as to the last, the natural construction of the language demands that the clause be read as applicable to all." *Porto Rico Ry., Light & Power Co. v. Mor*, 253 U.S. 345, 348, 40 S.Ct. 516, 64 L.Ed. 944 (1920). The court rejects the BZA's application of that principle as inconsistent with the regulation permitting "processing" (unqualified except—importantly—with regard to "the standards of external effects"). But, as I have said, this confuses the permit granted with one Perkins might have requested but deliberately did not. A regulation authorizing "processing" as such, but hedged with environmental limitations, did not preclude the grant of an occupancy permit requesting lesser authority. We know now what Perkins intended to do with the site, but the Board reasonably understood him to have requested and received permission to do something considerably more limited. The court's decision effectively puts the burden on the permit administrators to ferret out the real purpose behind an application artfully drawn to camouflage that purpose.

I respectfully dissent.

---

**2.** Indeed, 11 DCMR § 832.11 (1986) prohibits the manufacture of a variety of products (*e.g.*, bone products, animal rendering, and fertiliz-

ers) that may or may not involve hazardous materials.