Angela EVANS, Appellant/Cross–Appellee,

v.

MEDICAL INTER–INSURANCE EXCHANGE, Appellee–Cross/Appellant.

No. 03–CV–130, 03–CV–190.

District of Columbia Court of Appeals.

Argued April 5, 2004.
Decided Aug. 19, 2004.

---

Joseph Cammarata, Washington, with whom Anthony Newman, Bethesda, MD., was on the brief, for appellant/cross-appellee.

Laura N. Steel, with whom David A. Seltzer, Washington, was on the brief, for appellee/cross-appellant.

Before WAGNER, Chief Judge, STEADMAN, Associate Judge, Retired,* and BELSON, Senior Judge.

BELSON, Senior J.

This appeal arises from a suit brought by a physician's former patient to require the physician's insurance carrier to pay her $3,000,000 of a $5,600,000 judgment that she had been awarded in a medical malpractice action against the physician. The trial court concluded that the insurance company's "claims-made" coverage did not extend to the patient's claim, granted the insurance company's motion for summary judgment, and denied the patient's cross motion for summary judgment. The patient appeals the grant of summary judgment, and the insurance company cross-appeals certain adverse rulings. We affirm the grant of summary judgment, and do not reach the insurance company's cross-appeal.

I.

On July 12, 1994, appellant Angela Evans underwent a bilateral reduction mamoplasty (breast reduction), performed by Ivens C. LeFlore, M.D. Dr. LeFlore informed Ms. Evans that the healing and follow-up after the procedure would take at least one year. Following the surgery, Ms. Evans, displeased with Dr. LeFlore's handling of the procedure, obtained three other opinions as to the nature and extent of the healing process. On July 25, 1994, she was seen by Clyde Litton, M.D.; on August 16, 1994, she was seen by Robert Dennis, M.D., who later performed follow-up surgery; and on December 14, 1994, she was seen by Macy Hall, M.D. In the meantime, on August 4, 1994, she informed Dr. LeFlore during an office visit that she would not return to his office, but would seek care from another physician. That was the last time she saw Dr. LeFlore.

The injuries sustained by Ms. Evans as a result of the initial surgery by Dr. LeFlore did not fully develop until about one year following the surgery and included excessive tissue gathered under the armpit, nipple misplacement, and keloid scars which had formed on the breasts. On May 24, 1996, Ms. Evans underwent reparative surgery performed by Dr. Dennis. This procedure resulted in further complications allegedly due to Dr. Dennis's improper use of steroids in his treatment of Ms. Evans.

On July 12, 1997, Ms. Evans filed a complaint against Dr. LeFlore and Dr. Dennis alleging negligence in performance of the surgery and the postoperative wound care and treatment. At the time, Dr. LeFlore was insured by Medical Inter–Insurance Exchange (MIIX) pursuant to a "claims-made" policy that covered the policy period May 1, 1997, through January 1, 1998, with a retroactive date of January 1, 1995.[1] Ms. Evans filed her

---

* Judge Steadman was an Associate Judge of the court at the time of argument. His status changed to Associate Judge, Retired, on August 8, 2004.

1. "Claims-made" policies generally afford coverage for any negligent action of the insured physician in question regardless of the time the negligent act occurred provided the claim is made within the claim period of the policy. A different kind of policy, an "occurrence" policy, typically provides coverage for acts occurring during the policy coverage period only, regardless of when the claim is made. The policy being construed in this case is a "claims-made" policy in that it covers only claims made during the specified claim period in the policy. However, it also incorporates a "retroactive date," a date earlier than the eight-month period covered by

claim against Dr. LeFlore within the policy period, on July 12, 1997, but MIIX took the position that Ms. Evans's injuries were the result of services rendered before the retroactive date on Dr. LeFlore's policy, and therefore refused to defend Dr. Le-Flore or to pay any judgment obtained against him by Ms. Evans.

Thereafter, on April 26, 2000, a jury returned verdicts for Ms. Evans against Dr. LeFlore in the amount of $5,600,000, and against Dr. Dennis in the amount of $1,400,000, with interest from April 13, 2000, at six percent per annum.[2] Dr. Le-Flore did not appeal the resulting judgment in that amount. On February 20, 2001, Ms. Evans sought payment of the judgment from MIIX, which refused to pay it. Thereafter she filed the action against MIIX alleging breach of contract and seeking declaratory judgment. The judge granted summary judgment for MIIX and denied Ms. Evans's cross-motion for summary judgment as moot. The judge denied as moot MIIX's three other pending motions (motion in limine to exclude testimony and evidence not adduced at the malpractice trial, motion to strike expert testimony, and motion to supplement Super. Ct. Civ. R. 26(b)(4) statement).

Before us, appellant contends (1) that the court misinterpreted the clear, unambiguous language of the policy; (2) that her injuries did occur after the retroactive date in the policy and; (3) that, even if the court's interpretation of the policy was cor-rect, evidence was presented as to Dr. LeFlore's failure to render services after the retroactive date. Finally, she contends that Dr. LeFlore's negligence was manifested in four separate "medical incidents," as they are defined by the policy, and that she, therefore, is entitled to $1,000,000 per incident, up to the $3,000,000 maximum amount recoverable under the policy, plus interest, attorneys' fees and costs. MIIX cross-appeals the trial court's denial of its motion to strike plaintiff's proposed insurance experts, motion in limine to limit testimony and evidence, and motion for leave to file a supplemental Rule 26(b)(4) statement. Unpersuaded by the arguments of Ms. Evans, we affirm the trial court's grant of summary judgment and do not reach MIIX's cross-appeal.

## II.

We review a grant or denial of a motion for summary judgment *de novo* to determine whether any genuine issue of material fact exists and whether the prevailing party was entitled to judgment as a matter or law. *Herbin v. Hoeffel,* 806 A.2d 186, 190 (D.C.2002); *Ferrell v. Rosenbaum,* 691 A.2d 641, 646 (D.C.1997). We review the record in the light most favorable to the appellant as the non-movant, drawing all reasonable inferences in her favor. *Herbin,* 806 A.2d at 191 (citing *Ferrell,* 691 A.2d at 646).

The primary issue in this case is how to interpret the coverage clause language in-

---

the policy. By incorporating the retroactive date, the policy limits MIIX's responsibility to afford Dr. LeFlore coverage for past allegedly negligent acts or omissions to only those acts that occurred after that specified date, even though the claim was made during the period otherwise covered. Appellant has raised no argument that the structure of the policy is not permitted by law. *See generally, Mutual Fire, Marine & Inland Ins. Co. v. Vollmer,* 306 Md. 243, 508 A.2d 130 (1986); ROBERT E.

KEETON & ALAN L. WIDISS, INSURANCE LAW: A GUIDE TO FUNDAMENTAL PRINCIPLES, LEGAL DOCTRINES AND COMMERCIAL PRACTICES § 5.10 (West ed.1988).

2. The judgment against Dr. Dennis is not directly relevant to this appeal. See, however, footnote 5, below. We are informed by counsel that the matter was settled on appeal.

cluded in Dr. LeFlore's "claims-made" policy. Ms. Evans concedes that it is her burden to establish that her claim falls within the coverage of the policy. *Robinson v. Aetna Life Ins. Co.*, 288 A.2d 236, 238 (D.C.1972); *Group Hospitalization, Inc. v. Foley*, 255 A.2d 499, 500–01 (D.C. 1969). In order to determine what coverage the policy language creates, we first note certain relevant portions of the policy.

■ The policy sets forth that the "Policy Period" is "Effective from May 1, 1997 to January 1, 1998 . . . ." and that its "Retroactive Date" is "01/01/95." It sets forth the following in large type, all capitalized, across its front page near the top: "NOTICE: THIS POLICY DOES NOT PROVIDE COVERAGE FOR MEDICAL INCIDENTS THAT TAKE PLACE BEFORE THE RETROACTIVE DATE SHOWN ON THE DECLARATIONS PAGE."

That notice is followed directly by:

## I. COVERAGE AGREEMENTS

The Exchange will pay on behalf of the insured all sums that the insured shall become legally obligated to pay as damages because of:

Coverage A—Individual Professional Liability

Injury arising out of the rendering of or failure to render, on or after the retroactive date, professional services by the individual insured, or by any person for whose acts or omissions such insured is legally responsible, except as a member of a partnership . . . ."

Appellant focuses on the language of Coverage A, which expressly creates coverage for "injury arising out of the rendering of or failure to render, on or after the retroactive date, professional services by the individual insured. . . ." She contends that the quoted language should be read to cover *injuries* that occurred on or after the retroactive date, rather than the *services rendered or failed to be rendered* after that date. We disagree. In interpreting a clause such as the one at issue, we find guidance in the "Rule of the Last Antecedent," which is that " 'ordinarily, qualifying phrases are to be applied to the words or phrase immediately preceding them, and not to others more remote.' " *Perkins v. District of Columbia Bd. of Zoning Adjustment*, 813 A.2d 206, 209 n. 5 (D.C.2002) (quoting *District of Columbia v. Smith*, 329 A.2d 128, 130 (D.C.1974)).

While the rule is used most often to assist in statutory construction, we have used it in other contexts. In *Perkins*, for example, we used it to construe an occupancy permit. *Id.* at 211 *et seq.* The rule is not inflexible, and is not applied if the context in question suggests a different meaning. *Id.* (citing *United States v. Pritchett*, 152 U.S.App. D.C. 307, 311, 470 F.2d 455, 459 (1972)). But we find that is not the case here. We agree with the trial court that the language in question is not ambiguous, and find the trial court's reading of the provision straightforward and sensible. Application of the Rule of the Last Antecedent points us toward the conclusion that the phrase "on or after the retroactive date" modifies the immediately preceding words "rendering or failure to render" rather than "injury" as contended by Ms. Evans.

Further support for this reading of the coverage exists within the language of the policy. The "notice," quoted above, emphasizes that the policy does not provide coverage for medical incidents that took place before the retroactive date. The term "medical incidents" is defined in the policy to mean: "a single act or omission or a series of related acts or omissions in the

rendering of or failure to render professional services to any one person." The "Limits of Liability" section of the policy states in part

> (F) A medical incident shall be deemed to take place at the time of the first act or omission by any person in the rendering of or failure to render professional services to any person that: (I) gives rise to the claim or suit, and (ii) takes place during any period for which the insured was covered . . . .

Appellant's reading would create coverage for incidents that took place before the retroactive date if the injury did not fully develop until some time after that date or, arguably, if the injury was still being experienced after the retroactive date. Reading the language of the coverage clause, the notice of the retroactive date and the definition section of the policy together, we conclude that the MIIX is responsible only for claims which arise out of the rendering or failure to render services on or after the retroactive date in the policy—in this case January 1, 1995. Accordingly, MIIX was not responsible for any injuries arising out of the July 12, 1994, surgery performed by Dr. LeFlore. It is, however, liable for injuries, if any, arising out of services Dr. LeFlore rendered or failed to render after January 1, 1995. We turn, therefore, to the question of whether appellant presented evidence that raised a genuine issue of material fact regarding such rendering or failure to render services.

■ Appellant argues that Dr. LeFlore did fail to render services after the retroactive date, that evidence of those failures was presented at the malpractice trial and that MIIX is responsible for coverage as relates to injuries she sustained as a result of those failures. She advances three items of evidence in support of this contention (1) the testimony of appellant's expert witness, Dr. Mausner, at the malpractice trial; (2) her own affidavit; and (3) an affidavit of Dr. Mausner. We will consider the testimony of Dr. Mausner presented at the malpractice trial, but will consider the affidavits only to the extent that they bear upon whether the factual and legal grounds on which the judgment was based gave rise to coverage.[3]

■ The trial testimony of expert witness, Dr. Mark Mausner established his opinion that Dr. LeFlore's treatment of appellant fell below the standard of care in that he (1) did not address the excessive tissue remaining under Ms. Evans's armpit area; (2) did not offer Ms. Evans information on methods to reduce her scars; and (3) did not take postoperative photos at three-month, six-month, and one-year intervals to track progress. While this evidence could suggest that Dr. LeFlore was

---

**3.** The two affidavits were filed as attachments to Ms. Evan's motion for summary judgment in the coverage case before us and were not presented at the underlying malpractice trial. When a judgment is entered against an insured and indemnity is sought therefor, the only matters to be addressed are the factual and legal grounds upon which the judgment was entered and whether that judgment was entered on grounds that would give rise to coverage. Windt, Insurance Claims And Disputes at § 6.26; *see, e.g., U.S.X. Corp. v. Adriatic Ins. Co.,* 99 F.Supp.2d 593, 614 (W.D.Pa.

2000). Parties may not relitigate the issue of liability, but rather must rely on the pleadings, jury charge, written opinions, and transcripts from the underlying matter. Accordingly, no evidence with respect to appellant's allegation of malpractice by Dr. LeFlore, that was not adduced at the underlying malpractice trial, could properly be considered in this case. *Sherman v. Ambassador Ins. Co.,* 216 U.S.App. D.C. 93, 102, 670 F.2d 251, 260 (1981); Windt, Insurance Claims And Disputes § 6.26.

negligent after January 1, 1995, the record does not specifically so establish that for two reasons. The first is that Dr. Mausner's testimony dealt broadly with steps that should have been taken "after" the surgery, but the surgery was performed about five months before the retroactive date. Most important, indeed conclusive, is Ms. Evan's own malpractice trial testimony, which established that she was no longer a patient of Dr. LeFlore at the end of 1994.[4] Finally, the unrebutted testimony of Dr. LeFlore established that, on August 4, 1994, Ms. Evans told him that she would not return to his office, but would seek care from another physician, despite Dr. LeFlore's having scheduled a follow-up appointment ten days later which she declined to keep. In light of this evidence, Ms. Evans is unable to establish that she sustained injuries resulting from Dr. LeFlore's wrongful failure to render services after January 1, 1995, because she had removed herself from his care. Accordingly, she fails to meet her burden of showing that her judgment comes within the coverage of Dr. LeFlore's MIIX policy. *Robinson*, 288 A.2d at 238; *Group Hospitalization, Inc.*, 255 A.2d at 500–01.[5]

### III.

Having reviewed the record in the light most favorable to Ms. Evans, we conclude that the language of the policy required only that MIIX provide coverage for injuries arising out of the rendering or failure to render services on or after the January 1, 1995, retroactive date. We further conclude that the trial record was devoid of evidence that actionable negligence on the part of Dr. LeFlore occurred after January 1, 1995, and that therefore the trial court's grant of MIIX's motion for summary judgment and its denial of Ms. Evan's cross motion for summary judg-

4. Appellant testified as follows: "Q. Well, when did you first notice that the scars were raised? A. That was 1994. I couldn't give you an exact date. I don't know if it was weeks following surgery or months following. Q. Okay. But in any event, you had left Dr. LeFlore by that time? A. Yes."

5. Appellant suggests almost in passing that MIIX should be liable at least for the amount of the judgment entered against Dr. Dennis under the theory that Dr. LeFlore was "legally responsible" (in the policy's language) for Dr. Dennis' subsequent medical negligence, which occurred during reparative surgery required after Dr. LeFlore's original negligence. The jury in the first trial entered separate verdicts against the two doctors, each, as we understand it, separately covering the damages to appellant from each doctor's malpractice. In her complaint against MIIX that is now before us, appellant made no claim that MIIX was liable for the separate judgment entered against Dr. Dennis. In fact, her complaint specifically alleged that MIIX breached its contractual obligation to "satisfy a portion of Plaintiff's judgment against Dr. LeFlore" and sought declaratory judgment that MIIX was required to "satisfy the judgment rendered against Dr. LeFlore." Appellant made no motion to amend her complaint to include a claim that MIIX was also responsible for fulfillment of the judgment entered against Dr. Dennis. Appellant, therefore, cannot now seek enforcement of that judgment. *See* Super. Ct. Civ. R. 8(a) & (e); *Scott v. District of Columbia*, 493 A.2d 319, 323 (D.C.1985) (a complaint must "fairly put[ ] the defendant on notice of the claim against him"). Moreover, the judgment against Dr. Dennis has already been satisfied by that party through settlement on appeal. Appellant is entitled only to a single satisfaction of the judgment against Dr. Dennis. *See generally, e.g., Berg v. Footer*, 673 A.2d 1244, 1247 (D.C.1996); *Lamphier v. Washington Hosp. Ctr.*, 524 A.2d 729, 734 (D.C.1987).

Finally, Ms. Evans asserts that she is entitled to an aggregate 3 million dollars (the policy limit) because she suffered 4 separate "medical incidents" as they are defined within the policy. Having determined that the injuries sustained by Ms. Evans do not fall within the coverage of MIIX's policy, we need not address this contention.

ment, should be sustained. We affirm.[6]

*So ordered.*

---

**6.** MIIX raises three issues in its protective cross-appeal. In light of the disposition we announce, we need not reach MIIX's cross-appeal.