Isaac HARGROVE and Juanita
Handon, Appellants,

v.

DISTRICT OF COLUMBIA, Appellee.

Nos. 05–CT–256, 05–CT–257.

District of Columbia Court of Appeals.

Argued Oct. 8, 2009.
Decided Sept. 30, 2010.

Nigel L. Scott, Washington, DC, was on the brief for appellant Hargrove.

Jessica Brand, Public Defender Service, with whom James Klein and Andrea Roth, Public Defender Service, were on the brief, for appellant Handon.

Rosalyn Calbert Groce, Deputy Attorney General, with whom Peter J. Nickles, Attorney General for the District of Columbia, Todd S. Kim, Solicitor General, and Janice Y. Sheppard, Assistant Attorney General, were on the brief, for appellee.

Before REID, GLICKMAN, and BLACKBURNE–RIGSBY, Associate Judges.

GLICKMAN, Associate Judge:

Appellants are school officials who appeal their convictions of having violated the mandatory reporting statute, D.C.Code § 4–1321.02(a) (2001 & Supp.2010), by failing to report suspected child abuse after a student's parents complained to them that their daughter had been molested at school by other students. Appellants contend that the statute did not require them to report the incident because it did not involve child abuse or neglect on the part of a parent or other caretaker. We agree

and, accordingly, we vacate appellants' convictions.

## I.

Appellants, Isaac Hargrove and Juanita Handon, were the principal and vice-principal of Nation House School, a private school in the District of Columbia. On the evening of January 14, 2004, the parents of I.S., a preschool student at Nation House, complained to appellants that four of I.S.'s classmates had molested her in a school bathroom the previous day. By I.S.'s account, which her parents related to appellants, the other preschoolers—three boys and a girl—had put their fingers in her vagina. Earlier that day, I.S.'s parents had taken her to the hospital, and the Child and Family Services Agency (CFSA) and the Metropolitan Police Department (MPD) had been notified.

Appellants questioned the accused preschool students and their parents about I.S.'s claims and came to believe that her allegations were not credible. Neither appellant made a report on I.S.'s alleged abuse to the CFSA or MPD.

At MPD, the case was assigned to Detective James Goldring. On February 2, the detective visited the school and met with appellants as part of his investigation. He inquired of appellant Hargrove whether the school would provide him with its internal incident report. Hargrove, who had begun preparing that report the night I.S.'s parents lodged their complaint but had not yet finished it, told Detective Goldring he "had no idea" it had to be submitted to MPD or CFSA. When the detective returned to the school two days later, Hargrove gave him his completed written report on the matter.

The District of Columbia subsequently charged appellants with having violated the mandatory reporting statute, D.C.Code § 4–1321.02(a). In pertinent part, that statute requires a school official to make an immediate report to either the MPD or the CFSA[1] if he or she "knows or has reasonable cause to suspect that a child known to him or her in his or her professional or official capacity has been or is in immediate danger of being a mentally or physically abused or neglected child, as defined in [D.C.Code] § 16–2301(9)."[2] The referenced statutory provision in Title 16 is part of the subchapter governing neglect and delinquency proceedings in Family Court. It defines the term "neglected child" to mean a child who has been (or is in danger of being) abused or neglected in any of several specified ways by his or her "parent, guardian, or custodian."

At their bench trial, appellants moved for a judgment of acquittal. They argued that § 4–1321.02(a) did not require them to report the alleged abuse of I.S. by her classmates because it did not involve parental or other caretaker malfeasance and she therefore was not a "neglected child" within the meaning of § 16–2301(9). The trial judge disagreed with that interpretation of the mandatory reporting statute and found each appellant guilty of the misdemeanor offense.[3]

1. In 2004, and until it was amended in 2007, § 4–1321.02(a) provided for reports to be made to the Child Protective Services Division of the Department of Human Services or the MPD. Well before that amendment, however, the CFSA had assumed the role of implementing the mandatory reporting law. Thus, the parties agree that if appellants were obligated to make a report, it would have been to the CFSA or the MPD.

2. The persons required to report such abuse or neglect are enumerated in subsection (b) of D.C.Code § 4–1321.02.

3. At the time, willful violations of the mandatory reporting statute were punishable by a

## II.

■ No abuse or neglect on the part of I.S.'s parents (her caretakers) was suspected or involved in this case. That much is undisputed. We are presented with a pure question of law, the interpretation of the mandatory reporting statute, subject to *de novo* review.[4] At issue is the meaning of the language in D.C.Code § 4–1321.02(a) describing the child whose maltreatment must be reported: "a mentally or physically abused or neglected child, as defined in § 16–2301(9)." The parties disagree over how the two parts of this description relate to each other. Appellants argue that the phrase "as defined in § 16–2301(9)" modifies the preceding phrase, "a mentally or physically abused or neglected child," in its entirety, and hence that the statute requires a report only in cases of abuse or neglect involving caretaker malfeasance. The District argues that the reference to § 16–2301(9) defines only the term "neglected child" in the first phrase, and that a child may be "abused" within the meaning of that phrase even if no caretaker malfeasance is implicated. We conclude that appellants' reading of the statute is the correct one.

■ We construe statutes in accordance with "[o]rdinary grammatical and syntactical usage,"[5] and if the "plain meaning" of statutory language "is clear and unambiguous and will not produce an absurd result, we will look no further."[6] The phrase "a mentally or physically abused or neglected child" contains a single noun ("child") modified by adjectives, and thus constitutes a single noun-adjective compound. The following phrase, "as defined in § 16–2301(9)," set off from the first by a comma, functions as an adjectival modification of the "child" described by the first phrase— it equates that child to another noun-adjective compound, the "neglected child" defined by § 16–2301(9). Syntactically, therefore, the second phrase qualifies the first phrase in its entirety, not merely the term "neglected child." Appellants' reading of the reporting statute is the grammatically correct one.

That statutory reading comports with the rule of the last antecedent, pursuant to which qualifying words and phrases are assumed to refer solely to "the last word, phrase, or clause that can be made an antecedent without impairing the meaning of the sentence."[7] Because the phrase "mentally or physically abused or neglected child" is a single noun-adjective compound, it contains only one antecedent to the adjectival phrase that follows it. Indeed, as appellants point out, if the words "neglected child, as defined in § 16–2301(9)" were removed from the reporting statute, the words "mentally or physically abused" would modify nothing. The meaning then would be impaired—the sentence would be non-sensical.[8]

---

$100 fine and up to 30 days in jail. *See* D.C.Code § 4–1321.07 (2001). The maximum penalties subsequently were increased to a $300 fine and up to 90 days of imprisonment. *See* D.C. Law 16–306, § 203(c), 53 D.C.Reg. 8610 (effective Apr. 24, 2007).

4. *Veney v. United States*, 936 A.2d 811, 822 (D.C.2007).

5. *Nat'l Med. Ass'n v. District of Columbia*, 611 A.2d 53, 55 (D.C.1992).

6. *In re D.H.*, 666 A.2d 462, 469 (D.C.1995).

7. 2A SUTHERLAND STATUTORY CONSTRUCTION § 47:33, at 487–89 (7th ed. 2007) (internal quotation marks and footnote omitted); *see also Perkins v. District of Columbia Bd. of Zoning Adjustment*, 813 A.2d 206, 211 (D.C. 2002) ("The rule is not inflexible, and it is not applied if the context of the language in question suggests a different meaning.").

8. *Cf. Goldschmidt v. Paley Rothman Goldstein Rosenberg & Cooper*, 935 A.2d 362, 372 (D.C. 2007) (holding that clause set off by commas does not modify the balance of a statute that

Because § 16–2301(9) defines only the term "neglected child," while the reporting statute speaks of an "abused or neglected child," it may appear incongruous at first blush that the two terms should be deemed equivalent. The appearance of incongruity is deceiving, however, because the definition of a "neglected child" in § 16–2301(9) specifically includes a child "who has been ... abused by his or her parent, guardian, or custodian," [9] and the word "abused" in that definition is itself defined, in paragraph (23) of § 16–2301, to encompass sexual abuse, the infliction of physical or mental injury, and other specified mistreatment. Thus, § 16–2301(9) aptly defines an "abused or neglected child" for purposes of the reporting statute—even though the definition is not as broad as it could have been because it excludes abuse by persons other than caretakers.

■ As the "several words ['a mentally or physically abused or neglected child'] are followed by a [phrase] which is applicable as much to the first and other words as to the last, the natural construction of the language demands that the [phrase] be read as applicable to all." [10] This conclusion is buttressed by the Council's repeated use of the term "neglected child" to include an "abused child" in other, closely-related provisions of the mandatory reporting laws.[11] Thus, D.C.Code § 4–1321.01 (2001) declares that the "purpose" of the law is to "require a report of a suspected neglected child" in order to protect the child and to "prevent further abuse or neglect"; and § 4–1321.03(a), (b) (2001) states that the required report of "a known or suspected neglected child" must describe "[t]he nature and extent of the abuse or neglect of the child." The drafters employed the terms "neglect" and "abuse or neglect" and their variants interchangeably.[12]

The omission of a separate definition of the term "abused child" in § 4–1321.02(a) would be difficult to explain if the Council did not mean to capture its meaning by referring to § 16–2301(9). What possible reason would have led the Council to define *only* the term "neglected child" and not the companion term "abused child" as well? The District's answer to that question—that "neglected" is a term of art calling for definition while "abused" is not—is unpersuasive. Elsewhere—for instance, in D.C.Code § 16–2301—the Council has found it useful to define each term separately.

That the Council chose neither to define "abused child" in the mandatory reporting statute other than by reference to § 16–

---

would read "grammatically and sensibly" if the clause were deleted).

9. D.C.Code § 16–2301(9)(A)(i). The term "neglected child" also includes a child whose caretaker "has failed make reasonable efforts to prevent the infliction of abuse upon the child," *id.*, or "who is in imminent danger of being abused and another child living in the same household or under the care of the same parent, guardian, or custodian has been abused." *Id.* § 16–2301(9)(A)(v).

10. *Perkins*, 813 A.2d at 213 (quoting *Porto Rico Ry., Light & Power Co. v. Mor*, 253 U.S. 345, 348, 40 S.Ct. 516, 64 L.Ed. 944 (1920)).

11. "[A] statute should be read and construed as a whole within the context of the entire legislative scheme." *Howard v. Riggs Nat'l Bank*, 432 A.2d 701, 709 (D.C.1981).

12. Similarly, the Council recognized that abuse is a type of neglect when it directed police to handle "a report of a neglected child other than an abused child" differently from "a report of an abused child," D.C.Code § 4–1301.05(a), (b) (2001), and when it required the CFSA to determine whether a child "alleged to be a neglected, but not an abused, child" should be removed from the home, *id.* § 4–1301.07(a) (2001).

2301(9), nor to require reporting of non-caretaker abuse in § 4–1321.02(a), is confirmed by recent legislative history. In 2002 the Council considered expanding the definition of child abuse in paragraph (23) of § 16–2301 to cover abuse perpetrated by non-caretakers; prior to that time, the paragraph defined abuse the way it did neglect, as a type of caretaker malfeasance. In a submission to the Committee on the Judiciary, the United States Attorney's Office supported the expansion and recommended that the Council incorporate the proposed new definition of abuse in the mandatory reporting statute.[13] Noting that existing law "does not appear to mandate reporting of all child abuse, regardless of the relationship between the child and the perpetrator," the Office recommended that the reporting statute be amended "to read 'has been or is in immediate danger of being a mentally or physically abused or neglected child, as defined in § 16–2301(9) *or § 16–2301(23)*.'"[14] The committee report on the final version of the bill took note of the request "that the statute be changed to require mandatory reporting of child abuse by all persons."[15] However, while the Council proceeded to amend § 16–2301(23) to cover non-caretaker abuse, it did not make the corresponding change in § 4–1321.02(a).[16] That the

legislature did not adopt the suggested modification of § 4–1321.02(a) to correlate it to the expanded § 16–2301(23) "militates against [the District's] interpretation of the provision."[17]

A few years later, the Council considered and eventually adopted a more modest expansion of the reporting requirement in § 4–1321.02. As part of a proposed "Omnibus Public Safety Act of 2005," the Mayor recommended that the statute be amended to require the reporting of certain crimes against children committed by persons other than their caretakers. In written testimony submitted to the Judiciary Committee, the Attorney General explained the purpose of the proposed amendment as follows:

> The Mayor has also proposed the Mandatory Reporting of Child Victimization Act of 2005. This new law is designed to fill a gap in the existing reporting requirements pertaining to child victimization. Currently, a mandatory reporter must only report when a child has been neglected or abused by a caretaker, parent or guardian.[18] There is no existing requirement that a mandatory reporter notify authorities when a child has been the victim of a crime by someone who is not a caretaker....

**13.** *Improved Child Abuse Investigations Amendments Act of 2001: Hearing on Bill No. 14–372 before the Committee on the Judiciary, Council of the District of Columbia,* Statement of United States Attorney's Office at 7–8 (Feb. 4, 2002).

**14.** *Id.* (emphasis added).

**15.** Committee on Human Services, Council of the District of Columbia, *Report on Bill 14–372, "Improved Child Abuse Investigations Amendment Act of 2001,"* at 15 (June 11, 2002).

**16.** *See* D.C. Law 14–206, 49 D.C.Reg. 7815 (effective Oct. 19, 2002). *Cf.* D.C.Code § 4–

1345.01(1)(A) (defining an "at-risk child or youth" for certain funding purposes to include one subjected to "[a]buse or neglect, as described in § 16–2301(9) and (23)").

**17.** *Nat'l Med. Ass'n, Inc. v. District of Columbia,* 611 A.2d 53, 55 n. 1 (D.C.1992).

**18.** At the time the Attorney General made this statement, the CFSA's published guidelines for mandatory reporters defined "child abuse/neglect" for reporting purposes as mistreatment of a child "by a person responsible for the child's welfare." D.C. CHILD AND FAMILY SERVICES AGENCY, RECOGNIZING AND REPORTING CHILD ABUSE: A GUIDE FOR MANDATED REPORTERS at 1 (2003 rev. ed.).

The Mandatory Reporting of Child Victimization Act of 2005 is designed to expand the current law by including the requirement that specific mandated reporters be required to report certain crimes or injuries beyond the narrow scope of those which constitute child abuse or neglect....

This relatively narrow expansion of the District's existing mandated ·reporter law is an important step in providing additional protection for our children who have been seriously victimized, but are not necessarily abused or neglected. The Bill is carefully tailored to apply only to those who are routinely entrusted with the care of children and it is limited in the types of crimes or injuries that must be reported in order to ensure that the most egregious crimes against children do not go unreported.[19]

The Council eventually adopted the Mayor's proposal, not by expanding the definition of an "abused or neglected child" in subsection (a) of § 4–1321.02, but by adding subsection (e).[20] That subsection provides that a mandatory reporter

> who knows or has reasonable cause to suspect that a child known to him or her in his or her professional or official capacity has been, or is in immediate danger of being, the victim of "sexual abuse" or "attempted sexual abuse" prohibited by Chapter 30 of Title 22; or that the child was assisted, supported, caused, encouraged, commanded, enabled, induced, facilitated, or permitted to become a prostitute, as that term is

defined in § 22–2701.01(3); or that the child has an injury caused by a bullet; or that the child has an injury caused by a knife or other sharp object which has been caused by other than accidental means, shall immediately report or have a report made of such knowledge, information, or suspicion to the Metropolitan Police Department or the Child and Family Services Agency.

Subsection (e) would be redundant if subsection (a) already required mandatory reporters to report child abuse committed by non-caretakers. The District suggests that the Council simply "may have been acting out of an abundance of caution to clarify that at minimum the particular forms of abuse in new [subsection] (e) would trigger the statute." [21] That suggested explanation is belied by the legislative history of the amendment, which shows that subsection (e) was meant to enlarge the reporting requirement only to the extent stated therein.

In construing the pre-existing subsection (a) of § 4–1321.02, we appreciate that, ordinarily, "the views of a subsequent [legislature] form a hazardous basis for inferring the intent of an earlier one." [22] But this is not a situation in which a party is invoking "subsequent legislative history [to] override a reasonable interpretation of a statute that can be gleaned from its language and legislative history prior to its enactment." [23] The District has not advanced, nor have we found, any legislative history casting doubt on what we take to be the Council's consistent view from 2002

19. *Omnibus Public Safety Act of 2005: Hearing on Bill No. 16–247 before the Committee on the Judiciary, Council of the District of Columbia,* Testimony of Attorney General Robert J. Spagnoletti at 26 (May 31, 2005).

20. *See* D.C. Law 16–306, § 203(a) (effective Apr. 24, 2007).

21. Brief for the District of Columbia at 22 n. 8.

22. *United States v. Price,* 361 U.S. 304, 313, 80 S.Ct. 326, 4 L.Ed.2d 334 (1960).

23. *Doe v. Chao,* 540 U.S. 614, 626–27, 124 S.Ct. 1204, 157 L.Ed.2d 1122 (2004) (internal quotation marks omitted).

to 2007 that § 4–1321.02(a) imposes no reporting obligation with respect to non-caretaker malfeasance. That view comported with the plain meaning of the statute, and it reflected the expressed understanding of the Attorney General, the United States Attorney's Office, and the CFSA. So far as we are aware, no one disputed it. In these circumstances, we believe the Council's view of the matter is entitled to considerable weight. At a minimum, it "tells us how the law was *generally* interpreted at that time, even if we cannot draw from that fact [alone] that the interpretation is correct." [24]

We conclude that the mandatory reporting statute means just what it says. Section 4–1321.02(a) imposes no reporting requirement in the absence of reasonable cause to suspect caretaker malfeasance in connection with the abuse or neglect of a child. Because appellants had no reason to suspect such malfeasance on the part of I.S.'s parents or caretakers in the present case, we vacate their convictions.

*So ordered.*

---

**24.** *Washington Gas Light Co. v. Pub. Serv. Comm'n of the District of Columbia,* 982 A.2d 691, 721 n. 134 (D.C.2009) (emphasis in the original).