**UNITED STATES of America**

v.

**DeLoid PRITCHETT, Jr., Appellant.**

**No. 71–1957.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 18, 1972.

Decided Oct. 27, 1972.

Mr. Arthur J. Whalen, Jr., Washington, D. C. (appointed by this court), for appellant.

Miss Ruth R. Banks, Asst. U. S. Atty., with whom Messrs. Harold H. Titus, Jr., U. S. Atty., John A. Terry, and Herbert B. Hoffman, Asst. U. S. Attys., were on the brief, for appellee.

Before McGOWAN, Circuit Judge, WADE H. McCREE, Jr.,* Circuit Judge for the Sixth Circuit, and MacKINNON, Circuit Judge.

MacKINNON, Circuit Judge:

Appellant Pritchett, a corrections officer (guard) at the District of Columbia jail, was convicted of carrying a dangerous weapon (a .38 caliber revolver) in violation of D.C.Code § 22–3204,[1] for which offense he received a sentence of one year's imprisonment. The alleged offense grew out of an altercation between appellant and an off-duty policeman named Battle which occurred in the apartment building of appellant's girl friend. Battle was the first to draw his gun (a .38 caliber revolver). This menaced appellant who immediately took cover, and then drew his gun and shot Battle.

(1) *The statutory basis of the offense*

■ The statute appellant was convicted of violating provides:

No person shall within the District of Columbia carry either openly or concealed on or about his person, except in his dwelling house or place of business or on other land possessed by him, a pistol, without a license therefor issued as hereinafter provided, or any deadly or dangerous weap-

---

* Sitting by designation pursuant to Title 28, U.S.C. § 291(a).

1. In the same trial he was acquitted on charges of murder in the second degree, D.C.Code § 22–2403, and assault with a dangerous weapon, D.C.Code § 22–502.

on capable of being so concealed. . . [D.C.Code § 22–3204, July 8, 1932, 47 Stat. 651, ch. 465, § 4; Nov. 4, 1943, 57 Stat. 586, ch. 296; Aug. 4, 1947, 61 Stat. 743, ch. 469; June 29, 1953, 67 Stat. 94, ch. 159, § 204(c)]

The prohibitions of this statute are subject to certain exceptions and it is the interpretation of these exceptions which presents the principal question on this appeal:

§ 22–3205.  Exceptions to section 22–3204.

*The provisions of section 22–3204 shall not apply to marshals, sheriffs, prison or jail wardens, or their deputies, policemen or other duly appointed law-enforcement officers,* or to members of the Army, Navy, or Marine Corps of the United States or of the National Guard or Organized Reserves when on duty, or to the regularly enrolled members of any organization duly authorized to purchase or receive such weapons from the United States, provided such members are at or are going to or from their places of assembly or target practice, or to officers or employees of the United States duly authorized to carry a concealed pistol, or to any person engaged in the business of manufacturing, repairing, or dealing in firearms, or the agent or representative of any such person having in his possession, using, or carrying a pistol in the usual or ordinary course of such business or to any person while carrying a pistol unloaded and in a secure wrapper from the place of purchase to his home or place of business or to a place of repair or back to his home or place of business

or in moving goods from one place of abode or business to another.  [D.C. Code § 22–3205, July 8, 1932, 47 Stat. 651, ch. 465, § 5, emphasis added.]

Appellant contends, and the Government agrees, that his employment as a corrections officer for the District of Columbia jail satisfies the description contained in § 22–3205 of "jail wardens,[2] or their deputies."  However, the Government argues that such exception to § 22–3204 is applicable only to "jail wardens [and] their deputies" *"when on duty,"* [3] and that, since appellant was not on duty at the time of the charged offense, his conduct is not within the exceptions to § 22–3204 of the Act.  We conclude that the plain wording of the statute compels a contrary conclusion, i. e., that appellant is within the exception.

It is the Government's contention that the "when on duty" restriction in the exception to a prior statute which preceded the present statute should be read into the deputy jail warden exception in § 22–3205, but we do not consider that to be a sound interpretation of the existing law.  Section 22–3205, as presently constituted, was not an amendment, codification or revision of the statute which immediately preceded it, but was enacted separately as part of a large legislative purpose and in conjunction therewith the earlier (1901) statute was expressly repealed.  July 8, 1932, 47 Stat. 651, ch. 465, §§ 5, 17.

*(2) The statutory history of the present statute*

The forerunner of the present District of Columbia law prohibiting the carrying of dangerous weapons was contained in the Act of June 13, 1892,[4] which be-

---

2. "Warden" is defined as "A guardian; a keeper. This is the name given to various officers."  Black's Law Dictionary 1755 (4th ed. 1951).  The duties of a corrections officer at the D.C. jail include supervision of inmates, transfer of prisoners between institutions, guarding prisoners and guarding walls.

3. The statute places policemen in the same category as deputy jail wardens with respect to the right to carry guns, but po-

lice in the District of Columbia contend they have the right to carry guns at all times, whether they are on actual active duty or not, because a D.C. police regulation provides that policemen are "on duty" at all times (Tr. 187).

4. The 1892 enactment provided:
   *Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That it shall not be lawful for any person

came section 855 of the 1901 Code.[5] In codified form the 1892 statute continued as section 855 of the Code until 1932 when Congress enacted the present statute (D.C.Code § 22–3205) as part of the Act of July 8, 1932, 47 Stat. 651, ch. 465, § 5.

The 1932 legislation was entitled "An Act [t]o control the possession, sale, transfer, and use of pistols and other dangerous weapons in the District of Columbia, to provide penalties, to prescribe rules of evidence, and for other purposes." 47 Stat. 651. From its title it is apparent that it had a broader purpose than section 855 which preceded it. The 1932 Senate Committee Report described that purpose as follows:

> The intent of the proposed legislation is to provide a fair and effective control of the traffic in firearms in the District of Columbia.
>
> The bill embraces a comprehensive program of such control, with six principal features. These are:

1. Regulation of the sale of pistols to the public, and of firearms and other weapons to law-enforcement officers, Government agencies, etc.

2. Licensing of dealers in firearms.

3. Licensing of persons to carry pistols.

*4. Prohibiting possession of weapons for which there is no legitimate use.*

5. Prohibiting possession of pistols by persons previously convicted of a crime of violence.

6. Imposition of penalties for commission of a crime while armed, in addition to the penalty for the crime.

S.Rep.No.575, 72nd Cong., 1st Sess. 2 (1932). (Emphasis added.) The comparable provisions of the 1901 and the 1932 enactments are set forth in the margin.[6] A line by line comparison of these two sections indicates that the 1932 enactment was structured differ-

or persons within the District of Columbia, to have concealed about their person any deadly or dangerous weapons, such as daggers, air-guns, pistols, bowie-knives, dirk knives or dirks, blackjacks, razors, razor blades, sword canes, slung shot, brass or other metal knuckles.

Sec. 2. That it shall not be lawful for any person or persons within the District of Columbia to carry openly any such weapons as hereinbefore described with intent to unlawfully use the same, and any person or persons violating either of these sections shall be deemed guilty of a misdemeanor, and upon conviction thereof shall, for the first offense, forfeit and pay a fine or penalty of not less than fifty dollars nor more than five hundred dollars, of which one half shall be paid to any one giving information leading to such conviction, or be imprisoned in the jail of the District of Columbia not exceeding six months, or both such fine and imprisonment, in the discretion of the court: *Provided,* That the officers, noncommissioned officers, and privates of the United States Army, Navy, or Marine Corps, or of any regularly organized Militia Company, police officers, *officers guarding prisoners,* officials of the United States or the

District of Columbia engaged in the execution of the laws for the protection of persons or property, *when any of such persons are on duty, shall not be liable for carrying necessary arms for use in performance of their duty.* . . . [Emphasis added].
June 13, 1892, 27 Stat. 116.

5. This was the general codification of the laws of the District of Columbia which was entitled "An Act To establish a code of law for the District of Columbia." March 3, 1901, 31 Stat. 1189. The particular provisions contained in the 1892 statute, note 4, *supra,* were codified as Sec. 855 of the Code and are set out hereafter in the body of this opinion under the heading "The 1901 Act."

6. (a) *The 1901 Act* (Codification)
Sec. 855. Carrying Weapons.—Any person who shall within the District of Columbia have concealed about his person any deadly or dangerous weapon, or who shall carry openly any such weapon, with intent to unlawfully use the same, shall be fined not less than fifty dollars nor more than five hundred dollars, or be imprisoned not exceeding one year, or both: *Provided,* That the officers, noncommissioned officers, and privates of the United States Army, Navy, or Marine Corps, or of any regularly organ-

ently than the 1901 law and contained a number of alterations in essential wording. Included in these items of different wording is the elimination of the restriction in the 1901 Code limiting the exception for marshals, sheriffs, jail wardens, etc., to instances "when any such persons are on duty." In the 1932 Act the inclusive nature of this provision was stricken by the elimination of the reference to "any of such persons" and marshals, sheriffs and jail wardens, etc., were moved up ahead of military personnel, separated by the disjunctive "or", and thus removed from the modifying effect of the "when on duty" limitation. It is also of some significance that the 1932 Act did not purport to be a codification or revision of the earlier statute and did not purport to amend the prior provision but instead expressly repealed all of section 855.[7]

(3) *The interpretation of the present statute*

On this appeal it is the contention of appellant that the words "when on

ized militia company, police officers, officers guarding prisoners, officials of the United States or the District of Columbia engaged in the execution of the laws for the protection of persons or property, *when any of such persons are on duty*, shall not be liable for carrying necessary arms for use in performance of their duty: *Provided further*, That nothing contained in this section shall be so construed as to prevent any person from keeping or carrying about his place of business, dwelling house, or premises any such dangerous or deadly weapon, or from carrying the same from place of purchase to his dwelling house or place of business, or from his dwelling house or place of business to any place where repairing is done to have the same repaired and back again: *Provided further*, That nothing contained in this section shall be so construed as to apply to any person who shall have been granted a written permit to carry such weapon or weapons by any judge of the police court of the District of Columbia; and authority is hereby given to any such judge to grant such permit for a period of not more than one month at any time, upon satisfactory proof to him of the necessity for the granting thereof, and, further, upon the filing with such judge of a bond, with sureties to be approved by said judge, by the applicant for such permit, conditioned to the United States in such penal sum as said judge shall require for the keeping of the peace, save in the case of necessary self-defense by such applicant during the continuance of said permit, which bond shall be put in suit by the United States for its benefit upon any breach of such condition. 31 Stat. 1328, March 3, 1901, ch. 854, § 855. (Emphasis added.)

(b) *The 1932 Act*

### CARRYING CONCEALED WEAPONS

Sec. 4. No person shall within the District of Columbia carry concealed on or about his person, except in his dwelling house or place of business or on other land possessed by him, a pistol, without a license therefor issued as hereinafter provided, or any deadly or dangerous weapon.

### EXCEPTIONS

Sec. 5. The provisions of the preceding section shall not apply to marshals, sheriffs, prison or jail wardens, or their deputies, policemen or other duly appointed law-enforcement officers, or to members of the Army, Navy, or Marine Corps of the United States or of the National Guard or Organized Reserves when on duty, or to the regularly enrolled members of any organization duly authorized to purchase or receive such weapons from the United States, provided such members are at or are going to or from their places of assembly or target practice, or to officers or employees of the United States duly authorized to carry a concealed pistol, or to any person engaged in the business of manufacturing, repairing, or dealing in firearms, or the agent or representative of any such person having in his possession, using, or carrying a pistol in the usual or ordinary course of such business or to any person while carrying a pistol unloaded and in a secure wrapper from the place of purchase to his home or place of business or to a place of repair or back to him home or place of business or in moving goods from one place of abode or business to another. July 8, 1932, 47 Stat. 651, § 5.

7. The repealing section provided:

Sec. 17. The following sections of the Code of Law for the District of Columbia, 1919, namely, sections 855, 856 and 857, and all other Acts or parts of Acts inconsistent herewith, are hereby repealed. July 8, 1932, 47 Stat. 654, ch. 465, § 17.

duty" in the 1932 statute, D.C.Code § 22–3205, "modify only the conduct of the immediately preceding military groups." In contrast, the Government contends that members of *all* of the named groups preceding the phrase "when on duty" were intended to be covered by that phrase so as to restrict their right to carry weapons without a license only "when on duty" in their various official capacities. Under the Government's construction appellant would not be able to carry a gun when off duty [8] without violating the statute. We agree that there would be great legislative merit to a statute which prohibited such persons from carrying a pistol when off duty, unless licensed to do so, however, because of the language of the statute and its legislative history, we are unable to find such to be the congressional intent of the present statute for a number of reasons:

■■ *First*, the construction which the Government advances would be contrary to a normal reading of the language of the statute. Ordinarily, qualifying phrases are to be applied to the words or phrase immediately preceding and are not to be construed as extending to others more remote. This Rule of the Last Antecedent [9] is not an inflexible rule, and is not applied where the context indicates otherwise. Since there is no such indication here, we conclude that the application of the rule would be in keeping with the intention expressed in this statute.

*Second,* had the drafters of the statute intended the phrase "when on duty" to modify the earlier portion of the Act referring to deputy jail wardens, they could have left the statute the way it was or omitted the "or" preceding members of the "Army, Navy, or Marine Corps," etc., and inserted a comma before the phrase "when on duty" so as to separate it from the clause immediately preceding. That Congress did not do so indicates an intent to change the prior law so that the "when on duty" limitation would not apply to "marshals, sheriffs, prison or jail wardens," etc. This conclusion is particularly supported by the fact that this same technique of separating by "or" the groups which Congress intended to treat separately is followed elsewhere in this section in instances where it is obvious that Congress intended separate treatment. These separate groups in section 22–3205, each of which is separated by a disjunctive "or," and treated separately include: (a) marshals, sheriffs, jail wardens and other law enforcement officers; (b) military personnel; (c) personnel or organizations authorized to receive weapons from the United States; (d) officers or employees of the United States; (e) firearms manufacturers and dealers and those who repair firearms; (f) purchasers and owners carrying firearms for legitimate reason.

The frequency with which Congress indicates in section 22–3205 that the exceptions for the various groups therein

8. Appellant, and a number of other guards (corrections officers) at the District of Columbia jail, contend that it is necessary for them to carry arms when they are off duty in order to protect themselves against assaults by former inmates (many of whom are drug addicts) who carry grudges, fancied or real, from the time of their incarceration. Some of the guards live in the same neighborhoods as the former inmates. Appellant testified that the lives of guards at the jail were being threatened by inmates and former inmates (Tr. 119).

9. Mandel Bros. Inc. v. Federal Trade Commission, 254 F.2d 18, 22 (7th Cir.

1958), rev'd in part, 359 U.S. 385, 79 S.Ct. 818, 3 L.Ed.2d 893 (1959); Buscaglia v. Bowie, 139 F.2d 294, 296 (1st Cir. 1943); United States v. Hughes, 116 F.2d 613, 616 (3d Cir. 1940); T. I. McCormack Trucking Co. v. United States, 251 F.Supp. 526, 532–533 (D.N.J.1966), appeal after remand, 298 F.Supp. 39, 41 (1969); 2 Sutherland, Statutory Construction § 4921 (Horack ed. 1943); 82 C.J.S. Statutes § 334 (1953); 50 Am.Jur. Statutes § 269 (1944).

In United States v. Hughes, *supra,* Judge Clark termed the rule of the last antecedent "one of the simplest canons of statutory construction. . . ." 116 F.2d at 616.

specified were to vary depending upon the duty status of the individuals in the various groups, reinforces the conclusion that Congress intended its restrictive "when on duty" limitation to be applicable only to the antecedent group and not to others more remote. The differing duty statuses which Congress so specified in section 22–3205 include: "when on duty"; "going to or from their place of assembly or target practice"; "duly authorized to carry a pistol"; "engaged in the business of"; "carrying a pistol in the usual or ordinary course of such business"; "carrying a pistol unloaded" etc. to his home, a place of business or place of repair, etc.

*Third,* a close reading of section 14 of the 1932 Act, which is section 22–3214 of the D.C.Code, prohibiting the possession of certain other dangerous weapons and exempting certain groups from the prohibitions of the statute, makes it clear that Congress in this section was also treating "marshals, sheriffs, prison or jail wardens, [and] . . . their deputies, policemen or other duly-appointed law-enforcement officers" as a separate class from military personnel. Sec. 14 provides:

### POSSESSION OF CERTAIN DANGEROUS WEAPONS

Sec. 14. No person shall within the District of Columbia possess any machine gun, sawed-off shotgun, or any instrument or weapon of the kind commonly known as a blackjack, slung shot, sand club, sandbag, or switchblade knife, or metal knuckles, nor any instrument, attachment, or appliance for causing the firing of any firearm to be silent or intended to lessen or muffle the noise of the firing of any firearms: *Provided, however,* That machine guns, or sawed-off shotguns, and blackjacks may be possessed by the members of the Army, Navy, or Marine Corps of the United States, the National Guard, or Organized Reserve *when on duty,* the Post Office Department or its employees *when on duty,*

marshals, sheriffs, prison or jail wardens, or their deputies, policemen, or other duly-appointed law-enforcement officers, officers or employees of the United States duly *authorized to carry such weapons,* banking institutions, public carriers *who are engaged in the business of transporting mail, money, securities, or other valuables,* wholesale dealers and retail dealers *licensed under section 10 of this Act.*

D.C.Code § 22–3214, 47 Stat. 654 (emphasis added).

From a mere reading of this section it is obvious that the "when on duty" limitation to the exception (which is used twice) is not applicable to "jail wardens," etc. Likewise, the requirement that they must be "duly authorized to carry such weapons" is not applicable to marshals, sheriffs, jail wardens and "other duly appointed law-enforcement officers." However, officers and employees of the United States are treated differently. The legislative intent, which is apparent in the different treatment afforded marshals, jail wardens, policemen, etc., by this section, is to exempt such officers who are concerned with law enforcement and the care and custody of prisoners from the restrictions of section 22–3214 with respect to the additional weapons covered by that section. There would be even more reason to limit the application of this exception, permitting possession of machine guns, sawed off shotguns, etc., by jail wardens, to instances when such officials were "on duty" than there would be to limit their right to carry pistols to instances when they were "on duty," because most of the weapons (machine guns, etc.) referred to in section 14 (§ 22–3214) are not weapons or implements that marshals, sheriffs, jail wardens, police and other law enforcement officers would ordinarily carry even when on duty.

*Fourth,* while the Government contends that Congress intended that the plain meaning of the 1892 statute,[10] as

10. 27 Stat. 116; *see* note 4, *supra.*

codified in 1901,[11] should be read into the 1932 enactment,[12] we note that the Senate Committee Report, which accompanied the 1932 bill, does not indicate any intent to incorporate the earlier statute. In fact, the report indicates a somewhat different basis for the legislation, i. e.:

> The bill hereby reported is based on the uniform firearms act drafted by the national conference of commissioners on uniform State laws and approved by the American Bar Association, after many years' study of firearms legislation.

S.Rep.No.575, 72nd Cong., 1st Sess. 2 (1932).

Thus, while it is apparent that the draftsman of the 1932 Act used the earlier Act as the starting point for several sections, the changes he made over the earlier statute indicate an intention to change the earlier law, not to follow it, and this interpretation is supported by the above quotation from the Committee Report and the lack of any reference to the earlier statute in that Committee Report.

(4) *Our decision in Franklin v. United States*

The Government also contends that its position is supported by our decision in Franklin v. United States, 148 U.S.App. D.C. 39, 458 F.2d 861 (1972). That decision however is distinguishable in that it turned upon the interpretation of D.C.Code § 4–115 and the regulations thereunder which provided for the appointment of "special policemen" and prescribed the situations in which they were authorized to carry firearms.

For the foregoing reasons we conclude that the exception contained in section 22–3205 for deputy jail wardens was applicable to appellant in the circumstances of the alleged offense and it was accordingly error to charge appellant with a violation of D.C.Code § 22–3204. His conviction of such offense is therefore

Reversed.[13]

11. 31 Stat. 1328; *see* note 6, *supra.*

12. 47 Stat. 651; *see* note 6, *supra.*

13. This disposition of the case makes it unnecessary to consider whether the May 25, 1970 opinion of the Acting Corporation Counsel for the District of Columbia authorized appellant (and all deputy jail wardens) to carry guns when they were off duty.

In connection with appellant's claim that corrections officers were authorized to carry guns when they were off duty, it is significant that authorities at the District of Columbia jail made provision at the jail for corrections officers to check their personal firearms when they were on duty. At that time if they were to be armed the jail supplied them with the weapons to carry out the duties of their assignment while on duty.