Leroy K. SMITH, Appellant,

v.

UNITED STATES, Appellee.

No. 09–CO–1412.

District of Columbia Court of Appeals.

Argued Nov. 10, 2010.

Decided May 26, 2011.

Erin Morrow Hawley, with whom Jeffrey S. Bucholtz, Washington, DC, and Steven Gremminger, New York, NY, were on the brief, for appellant.

Elizabeth H. Danello, Assistant United States Attorney, with whom Ronald C. Machen, Jr., United States Attorney, and Roy W. McLeese III, and Mary Ann Snow, Assistant United States Attorneys, were on the brief, for appellee.

Before RUIZ and THOMPSON, Associate Judges, and NEBEKER, Senior Judge.

NEBEKER, Senior Judge:

Appellant entered an unconditional guilty plea to three charges: attempted

carrying a pistol without a license ("ACPWL"); possession of an unregistered firearm ("UF"); and unlawful possession of ammunition ("UA").[1] After a suspended sentence and unsupervised probation, he filed a petition for writ of error *coram nobis*, which was denied by the trial court. On appeal, appellant contends that his convictions are invalid because: (1) the Armored Car Industry Reciprocity Act, 15 U.S.C. § 5902 (2006) (the "Armored Car Act"),[2] preempts our gun control laws; (2) the trial court erred by holding that the U.S. CONST. amend. II (the "Second Amendment") right *only* protects firearm possession for the immediate purpose of self-defense in the home, and does not cover his possession of a pistol in his car when he was arrested; and (3) plea counsel provided ineffective assistance by failing to argue that the Armored Car Act preempts the District of Columbia's gun laws and, thus, invalidates appellant's convictions.

Appellant asks that we reverse and vacate his convictions and permit him to withdraw his guilty plea, or, in the alternative, that we remand for an evidentiary hearing on appellant's petition for writ of error *coram nobis*. We affirm the trial court's ruling and deny his request for a remand.

**1.** The offenses are cited, respectively: D.C.Code § 22–4504(a) (2001); D.C.Code § 7–2502.01(a) (2001); and D.C.Code § 7–2506.01(a)(3) (2001).

**2.** The Armored Car Act provides, in relevant part:

If an armored car crew member employed by an armored car company—

\* \* \*

(2) has met all other applicable requirements to act as an armored car crew member in the State in which such member is primarily employed by such company, then *such crew member shall be entitled to law-*

## I.

Appellant was a 16–year veteran of the Metropolitan Police Department ("MPD"). The Federal Mediation and Conciliation Service determined that he was wrongfully terminated from the MPD, and ordered his timely reinstatement. While appellant waited for the MPD to reinstate him, he began working as an automated teller machine ("ATM") technician for Bantek West ("Bantek"), an ATM company, located in Virginia. On September 11, 2006, around 1:00 a.m., appellant was driving to his wife's apartment in Southeast, Washington, D.C., and police officers pulled appellant over for failing to stop at a stop sign. The officers observed that appellant was wearing a fanny pack similar to a holder for concealed weapons. When asked about the pack, appellant told the officers that it was his "gun belt," that he was supposed to be reinstated as an MPD police officer, and that he was currently working for a private company. The officers removed appellant from his car and recovered his weapon, an operable Glock semi-automatic pistol, which was loaded with 16 rounds of ammunition. The officers arrested appellant, and he was subsequently charged with CPWL, UF, and UA.

On February 22, 2007, during appellant's plea hearing, appellant produced a license

*fully carry any weapon to which such license relates and function as an armored car crew member in any State while such member is acting in the service of such company.* 15 U.S.C. § 5902(a)(2) (2006) (emphasis added).

Moreover, 15 U.S.C. § 5903 (2006) provides: "This [chapter] shall supersede any provision of State law (or the law of any political subdivision of a State) that is inconsistent with this [chapter]."

For the purposes of this statute, the District of Columbia is referred to as a state. 15 U.S.C. § 5904(3) (2006). ("The term 'State' means any State of the United States or the District of Columbia.").

issued by the Commonwealth of Virginia, permitting him to carry his firearm, pursuant to the nature of his employment with Bantek.[3] However, appellant did not possess a license issued by the District of Columbia for the firearm he possessed on the day in question. Ultimately, per his counsel's advice, appellant pleaded guilty to ACPWL, UF, and UA. Appellant was sentenced to ninety days in jail, with the sentence suspended, and nine months' unsupervised probation on each count to run concurrently, plus fines.

On June 7, 2008, appellant, through new counsel, filed a petition and supplemental memorandum in support of the writ of error *coram nobis*, seeking the vacation of appellant's three convictions.[4] In it, appellant stated that he left his apartment and was on his way to his wife's apartment "where he planned to stay for a few hours and eat breakfast with his young daughter then to continue to his job in Virginia." Ultimately, the court denied appellant relief. Appellant filed a timely notice of appeal on November 16, 2009.

## II.

▮ As a preliminary matter, this court notes that appellant has waived his current preemption and Second Amendment claims because he knowingly entered an unconditional guilty plea, thus, he waived his right to appeal his convictions.[5] It is settled within this court that "[o]rdinarily, a defendant who enters a plea of guilty waives all non-jurisdictional defects in the proceedings in the trial court." *In re Peak*, 759 A.2d 612, 616 (D.C.2000) (per curiam); *accord, Collins v. United States*, 664 A.2d 1241, 1242 (D.C.1995) (per curiam). Here, because appellant's preemption and Second Amendment challenges are non-jurisdictional in nature, his unconditional guilty plea waives his right to present these claims. However, as the government concedes, appellant has not waived his ineffectiveness claim that he would not have pleaded guilty if advised as to his statutory preemption claim. Nevertheless, on the facts of this case, that preemption claim was unavailable to appellant and advice by counsel to forgo a guilty

---

3. During the plea hearing, defense counsel noted that appellant worked as an ATM technician, and that he had a license for his weapon while he was "actively on the job." However, counsel later conceded that appellant "was not on the job at the time." Counsel further conceded that "we are not alleging that this was during the course of the employment and we did research on the issue."

4. Appellant alleged that his writ of error *coram nobis* was warranted because the trial court was unaware that: (1) appellant was going to work on the morning of his arrest; and (2) appellant held a valid firearm's license that was issued by the Commonwealth of Virginia, which permitted him to carry a firearm into the District of Columbia, per the Armored Car Act.

5. This court recognizes the waiver exception set forth by the Supreme Court in *Blackledge v. Perry*, 417 U.S. 21, 30–31, 94 S.Ct. 2098, 40

L.Ed.2d 628 (1974), and *Menna v. New York*, 423 U.S. 61, 62–63 & n. 2, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975) ("a plea of guilty to a charge does not waive a claim that—judged on its face—the charge is one which the State may not constitutionally prosecute."). However, appellant's preemption and Second Amendment claims do not fit the *Blackledge/Menna* exception, as the United States rightfully prosecuted appellant for violating the respective statutes and, thus, the regular rule of waiver applies.

For this same reason, there is no merit to appellant's reliance on this court's language in *Arrington v. United States*, 585 A.2d 1342, 1344 n. 2 (D.C.1991) ("a guilty plea cannot generally be collaterally attacked, [but] the Supreme Court recognized an exception 'where on the face of the record the court had no power to enter the convictions or impose the sentence.'") (citation omitted); *see Sims v. United States*, 963 A.2d 147, 149 (D.C. 2008).

plea on this ground would itself have been erroneous.

▇▇▇ Furthermore, the writ of error *coram nobis* is an extraordinary remedy that can be used to correct a legal *or* factual error. *United States v. Denedo*, — U.S. ——, 129 S.Ct. 2213, 2221, 173 L.Ed.2d 1235 (2009); *Magnus v. United States*, 11 A.3d 237, 246 (D.C.2011). It is available under the All Writs Act, 28 U.S.C. 1651(a) (2006), and the petitioner must show: (1) "the trial court [was] unaware of the facts giving rise to the petition; (2) the omitted information [is] such that it would have prevented the sentence or judgment; (3) petitioner [is] able to justify the failure to provide the information; (4) the error [is] extrinsic to the record; and (5) the error [is] of the 'most fundamental character.' " *United States v. Hamid*, 531 A.2d 628, 634 (D.C.1987) (citation omitted).

Regarding the first, second and fourth entitlement elements, while the government concedes that there were some facts that were unknown to the trial court during the plea hearing that were extrinsic to the record, appellant could not prove that these facts would have prevented the judgment. Although appellant assumes, by way of argument, that the court would not have accepted his guilty plea had it been aware of the unknown facts, there is nothing to support this assumption. Appellant voluntarily and intelligently entered an unconditional guilty plea. Once apprised of the "omitted" information, the trial judge plainly stated that this information would have been insufficient to prevent the sentence or entry of judgment. Thus, error did not attach to the court accepting appellant's guilty plea. Moreover, regarding the third and fifth elements of entitlement to the writ, appellant cannot justify his failure to provide this information during his plea hearing or earlier, nor has he

shown that the alleged error is "of the most fundamental character." *Hamid*, 531 A.2d at 634.

▇▇▇ Next, appellant contends that his lawyer was ineffective in failing to argue to the court or advise appellant that his conviction under D.C. gun laws was preempted by the Armored Car Act because appellant was transporting his "federally authorized firearm to his work as an ATM guard and thereby acting 'in service of his employer.' " Appellant argues that, per the Armored Car Act, an armored car employee is permitted to lawfully carry a state-licensed weapon in any state while that employee "is acting in the service of such company," 15 U.S.C. § 5902(a)(2) (2006), and that here, appellant was in service of Bantek because he was on his way to work when he was stopped and arrested. Appellant further argues that the Armored Car Act preempts the District's gun laws because it "supersede[s] any provision of State law ... that is inconsistent with this [chapter]." 15 U.S.C. § 5903 (2006).

Even taken on its face, appellant's preemption argument fails. While the Armored Car Act does operate in the District of Columbia, and appellant was an "armored car crew member" who possessed a valid Virginia license to carry his weapon, the facts do not establish that he was carrying this weapon "while ... acting in the service of" Bantek. *See* 15 U.S.C. § 5902(a)(2) (2006). The record shows, and appellant's brief concedes, that he was carrying his loaded weapon through the District on his way to his wife's house at 1 a.m. to "sleep for a few hours and to have breakfast with his daughter." Here, the charged offense occurred several hours *before* appellant was planning to leave for work. Therefore, appellant's convictions must stand.

■ Appellant also contends that his ACPWL, UA, and UF convictions are invalid under the Second Amendment and under *District of Columbia v. Heller,* 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008). We are reminded that appellant's guilty plea has waived any potential Second Amendment claim that he may raise on appeal.

However, even if this court were to address the merits of appellant's Second Amendment claim, it would fail. Appellant argues that the trial court erred in holding that the Second Amendment only guarantees the right to self-defense in the home, and that it erred by interpreting that *Heller's* holding was limited to "the possession of firearms in one's home for the purpose of immediate self-defense." Appellant asserts that *Heller* holds that Second Amendment rights "extend beyond the immediate defense of hearth and home," and that one may carry weapons "in case of confrontation." *Id.* at 592, 128 S.Ct. 2783.

While this court recognizes that *Heller* found the District's firearm regulatory scheme to be unconstitutional—to the extent that there was an absolute ban on an entire class of firearms—we also recognize that "*Heller* did not, however, invalidate any of the District's *individual* gun control laws...." *Brown v. United States,* 979 A.2d 630, 638 (D.C.2009) (emphasis added). In *Howerton v. United States,* 964 A.2d

1282, 1287 (D.C.2009), this court further recognized that "[t]he focus of the Supreme Court's analysis in *Heller* was the right 'to use arms *in defense* of hearth and home.'" *Id.* (quoting *Heller,* 554 U.S. at 635, 128 S.Ct. 2783).

Here, appellant was not using his weapon in defense of his hearth and home. He was traveling on a public street in the District with a loaded firearm, which was not licensed by the District, on his way to his wife's apartment for a protracted stay before leaving for work.[6] Even per appellant's interpretation of *Heller,* that Second Amendment rights extend beyond the hearth and home and that one can carry a weapon in case of confrontation, there is no indicia in the record that appellant was traveling with his loaded firearm to defend himself or was facing some imminent confrontation. We do not opine on the merit of this contention had the record been otherwise. Thus, appellant's Second Amendment contention fails.

Accordingly, we affirm appellant's convictions.

---

6. Moreover, appellant made no showing that he could not store his weapon at his place of work in Virginia.