**Bashawn R. GAMBLE, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 09–CF–184.**

District of Columbia Court of Appeals.

Argued Sept. 8, 2011.

Decided Oct. 27, 2011.

Christine A. Monta, Public Defender Service, with whom James Klein and Alice Wang, Public Defender Service, were on the brief, for appellant.

Mona Sahaf, Assistant United States Attorney, with whom Ronald C. Machen Jr., United States Attorney, and Roy W. McLeese III, Chrisellen R. Kolb, Ademuyiwa Bamiduro, and Kevin Andrew Chambers, Assistant United States Attorneys, were on the brief, for appellee.

Before WASHINGTON, Chief Judge, FISHER, Associate Judge, and REID, Associate Judge, Retired.

**FISHER, Associate Judge:**

Invoking the Supreme Court's decision in *District of Columbia v. Heller*, 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008), appellant Bashawn Gamble challenges his conviction for carrying a pistol without a license (CPWL). Unpersuaded by appellant's argument that the Second Amendment gives him a right to carry a concealed firearm outside his home or place of business, we affirm.

### I. Factual and Procedural Background

Around 9:00 p.m. on April 21, 2008, two Metropolitan Police Department (MPD) officers on routine patrol in the 400 block of Sixth Street, Southeast, saw appellant "attempting to hide himself behind a tree" and "holding what appeared to be [an open container of alcohol.]" When the officers left their vehicle and approached him, Mr. Gamble put the bottle down and fled. After they confirmed that the bottle contained alcohol, the officers pursued and apprehended appellant. A search incident to arrest[1] revealed that he was carrying a loaded .380 Firestorm semi-automatic pistol and a spare magazine containing additional rounds of ammunition in the pockets of his jacket.[2]

A grand jury indicted appellant on one count of CPWL (outside the home or place of business), one count of possession of an unregistered firearm (UF), and one count of unlawful possession of ammunition (UA).[3] After the United States Supreme

---

1. Under D.C.Code § 25–1001(d) (2001), it is a misdemeanor, punishable by up to ninety days' imprisonment and/or a fine of up to $500, to possess an open container of alcohol on a street or a sidewalk, or in many other public places. A police officer may arrest an individual who is violating this provision if the officer has probable cause to believe the offense is being committed in his or her presence. *See Perkins v. United States*, 936 A.2d 303 (D.C.2007); D.C.Code § 23–581(a)(1)(B) (2001).

2. The firearm was later "test fired and found to be operational. A records check revealed that [Mr. Gamble] does not have a license to carry a firearm in D.C."

3. D.C.Code § 22–4504(a) (2001); D.C.Code § 7–2502.01 (2001); D.C.Code § 7–2506.01

Court decided *Heller*, Mr. Gamble filed a motion to dismiss the charges against him. Judge Puig–Lugo denied appellant's motion, holding that the Second Amendment did not protect appellant's possession of a firearm "in a concealed manner in a public place." Citing *Heller*, the trial court explained that the Second Amendment right "is not absolute" and yields to regulation in situations such as the one presented in appellant's case. In addition, the trial court noted that *Heller* "did not facially invalidate the statutes[.]" Judge Puig–Lugo further observed that appellant was not a resident of the District of Columbia and had neither shown nor argued that he had acquired the firearm in a lawful manner.

Mr. Gamble entered a conditional plea of guilty to the CPWL count (reserving the right to appeal the denial of his motion to dismiss), and the government dismissed the other two charges. This appeal followed.

## II. The Second Amendment and *Heller*

In *Heller*, the Supreme Court held "that the Second Amendment conferred an individual right to keep and bear arms." 554 U.S. at 595, 128 S.Ct. 2783.[4] The Court did not attempt to define the "full scope" of this right, *id.* at 626, 635, 128 S.Ct. 2783, but held that it includes "having a handgun in the home 'to "keep" and use for protection of one's home and family[.]' " *Plummer v. United States*, 983 A.2d 323, 336 (D.C.2009), as amended on denial of rehearing and rehearing en banc (May 20, 2010) (quoting *Heller*, 554 U.S. at 628–29, 128 S.Ct. 2783). Consequently, the Supreme Court ruled, "the District's ban on handgun possession in the home violates the Second Amendment, as does its prohibition against rendering any lawful firearm in the home operable for the purpose of immediate self-defense." *Heller*, 554 U.S. at 635, 128 S.Ct. 2783.

At the same time, *Heller* recognized that, "[l]ike most rights, the right secured by the Second Amendment is not unlimited." *Id.* at 626, 128 S.Ct. 2783. "From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.* For example, the Court noted,

> the majority of the 19th-century courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues. Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

*Id.* at 626–27, 128 S.Ct. 2783 (internal citations omitted). In a footnote appended at the end of this passage, the Supreme Court explained: "We identify these presumptively lawful regulatory measures only as examples; our list does not purport to be exhaustive." *Id.* at 627 n. 26, 128 S.Ct. 2783.

Thus, after declaring that "the right of the people to keep and bear Arms" is an

---

(2001). These statutes have since been amended in various respects.

4. The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."

individual, not a collective, right, *Heller* held that "the Second Amendment does not permit 'the absolute prohibition of handguns held and used for self-defense in the home.'" *Mack v. United States,* 6 A.3d 1224, 1235 (D.C.2010) (quoting *Heller,* 554 U.S. at 636, 128 S.Ct. 2783). The Court intentionally left many questions about the scope of this right to be answered in future litigation.[5]

### III.  Analysis

In one portion of *Heller,* the Supreme Court stated that there is an "individual right to possess and carry weapons in case of confrontation."  554 U.S. at 592, 128 S.Ct. 2783.  Quoting this passage, Mr. Gamble asserts that "this Court is obligated to recognize that the Second Amendment right 'to possess and carry weapons in case of confrontation,' ... cannot be limited to the confines of the home."  The government suggests in response that this court "is under no such obligation and is not, as appellant asserts, squarely presented with that [broader] question" because this court "can dispose of appellant's challenge on the ground that carrying a concealed weapon is not protected by the Second Amendment."

■  We agree with the government. We need not in this case decide whether, and under what circumstances, the Second Amendment right extends outside the home.  It is sufficient to hold that appellant's conviction for carrying a concealed

pistol without a license on the streets of the District of Columbia did not violate his constitutional right to keep and bear arms.[6]

### A.  There Is No Second Amendment Right to Carry a Concealed Weapon

■  Appellant conceded that, at the time of his arrest, he was carrying a loaded pistol in his jacket pocket and "he was not in his home[,]" nor was he "in his place of business[.]"  Thus, when he argues that his conviction offends the Second Amendment, Mr. Gamble is necessarily asserting that an individual has the right to carry concealed firearms outside the home.  But *Heller* "does not hold, nor even suggest, that concealed weapons laws are unconstitutional."  *United States v. Hart,* 726 F.Supp.2d 56, 60 (D.Mass.2010).  To the contrary, *Heller* "made clear that 'the right secured by the Second Amendment is not unlimited,' and it specifically acknowledged that laws prohibiting the carrying of concealed weapons have long been upheld as appropriate limits on that right."  *Mack,* 6 A.3d at 1236 (quoting *Heller,* 554 U.S. at 626, 128 S.Ct. 2783); *see also Heller v. District of Columbia,* —— U.S.App. D.C. ——, —— F.3d ——, 2011 WL 4551558 at *5 (Oct. 4, 2011) (observing that the *Heller* Court identified "prohibitions on carrying concealed weapons" as one of the "historical limitations upon the scope of the right protected by the Second

**5.**  Two years later, in *McDonald v. City of Chicago,* —— U.S. ——, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010), the Supreme Court held that the Second Amendment applies to the States through the Fourteenth Amendment, but it did not elaborate on or clarify the substance of that right.

**6.**  This court reviews "a challenge to the constitutionality of a statute *de novo.*"  *In re Warner,* 905 A.2d 233, 237 (D.C.2006); *see Farina v. United States,* 622 A.2d 50, 55 n. 7

(D.C.1993); *see also United States v. Rene E.,* 583 F.3d 8, 11–16 (1st Cir.2009) (conducting *de novo* review and holding that federal ban on juvenile possession of handguns did not violate Second Amendment); *State v. Knight,* 42 Kan.App.2d 893, 218 P.3d 1177, 1187–90 (2009) (reviewing *de novo* post-*Heller* challenge to state statute that criminalizes possession of a concealed firearm and holding regulation did not violate Second Amendment).

Amendment"); *id.* at *28, —— F.3d at —— (Kavanaugh, J., dissenting) ("the Court in *Heller* affirmatively *approved* a slew of gun laws-machine gun bans, concealed-carry laws, felon-in-possession laws, and the like").

*Heller* noted, as mentioned above, that "the majority of the 19th-century courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues." 554 U.S. at 626, 128 S.Ct. 2783,[7] citing *Nunn v. State,* 1 Ga. 243 (Ga.1846) ("so far as the act ... seeks to suppress the practice of carrying certain weapons *secretly,* ... it is valid, inasmuch as it does not deprive the citizen of his *natural* right of self-defence, or of his constitutional right to keep and bear arms") (emphasis in original); and *State v. Chandler,* 5 La.Ann. 489, 489–90 (1850) (statute prohibiting the carrying of concealed weapons did not violate the Constitution of the United States). Indeed, more than a century ago, the Supreme Court commented that "the right of the people to keep and bear arms (article 2) is not infringed by laws prohibiting the carrying of concealed weapons[.]" *Robertson v. Baldwin,* 165 U.S. 275, 281–82, 17 S.Ct. 326, 41 L.Ed. 715 (1897) (dictum).

Such laws recognize the particular danger posed by the carrying of concealed weapons. *See, e.g., (Pomeroy) Brown v. United States,* 58 App.D.C. 311, 312, 30 F.2d 474, 475 (1929) ("What was the purpose of Congress in the enactment of this law? Obviously, the protection of the public from the menace of concealed 'deadly or dangerous' weapons. No one familiar with present conditions will doubt the necessity for such a statute."); *People v. Yarbrough,* 169 Cal.App.4th 303, 86 Cal.Rptr.3d 674, 682 (2008) ("Unlike possession of a gun for protection within a residence, carrying a concealed firearm presents a recognized threat to public order, and is prohibited as a means of preventing physical harm to persons other than the offender") (internal quotation marks and citation omitted); *State v. Chandler,* 5 La.Ann. at 489–90 ("This law became absolutely necessary to counteract a vicious state of society, growing out of the habit of carrying concealed weapons, and to prevent bloodshed and assassinations committed upon unsuspecting persons."); *Peruta v. County of San Diego,* 758 F.Supp.2d 1106, 1117 (S.D.Cal. 2010) (the government has "an important interest in reducing the number of concealed weapons in public in order to reduce the risks to other members of the public who use the streets and go to public accommodations" especially "because of [the] disproportionate involvement [of concealed handguns] in life-threatening crimes of violence, particularly in streets and other public places"). Judge Puig–Lugo echoed these concerns: "To maintain the position that, all of a sudden, it's a free for all out there when it comes to firearms based on the *Heller* decision would be inappropriate, and, frankly, it would be asking for trouble."

"[I]n the aftermath of *Heller* the prohibition 'on the carrying of a concealed

---

**7.** Various scholars agree with this assessment. *See, e.g.,* David B. Kopel, *The Second Amendment in the Nineteenth Century,* 1998 B.Y.U. L.Rev. 1359, 1416 (1998) (during nineteenth century, "solid majority" of state court decisions upheld validity, under "Second Amendment and its state analogues," of statutes restricting or prohibiting carrying of concealed weapons "while affirming an individual right to own and carry guns"); Robert Dowlut, *The Right to Arms: Does the Constitution or the Predilection of Judges Reign?,* 36 Okla. L.Rev 65, 94 n. 139 (1983) ("The prevailing view is that prohibiting the concealed carrying of weapons does not infringe the private right to bear arms guaranteed in the federal and various state constitutions.").

weapon without a permit, continues to be a lawful exercise by the state of its regulatory authority notwithstanding the Second Amendment.'" *Yarbrough*, 86 Cal.Rptr.3d at 683 (quoting *United States v. Hall*, 2008 WL 3097558, at *1 (S.D.W.Va. Aug. 4, 2008)). *See Knight*, 218 P.3d at 1189–90 (rejecting argument "that *Heller* conferred on an individual the right to carry a concealed firearm"); *People v. Dykes*, 46 Cal.4th 731, 95 Cal.Rptr.3d 78, 209 P.3d 1, 43–44 (2009) ("*Heller* does not require us to conclude that possession in a public place" of a "loaded and concealed firearm, without [a] permit" "cannot be defined as a crime under state law"); *Kachalsky v. Cacace*, 2011 WL 3962550 at *20 (S.D.N.Y. Sept.2, 2011) (concluding that "the scope of the Second Amendment right in *Heller* does not extend to invalidate regulations . . . on carrying handguns"); *Dorr v. Weber*, 741 F.Supp.2d 993, 1004–06 (N.D.Iowa 2010) (rejecting claim that *Heller* "establish[ed] a right to carry a concealed weapon under the Second Amendment"). Indeed, appellant has not directed the court's attention to any post-*Heller* authority recognizing a Second Amendment right to carry a concealed weapon.

## B. The District's CPWL Statute Was Validly Applied to Appellant

■ In a less ambitious variant of his argument, Mr. Gamble asserts that the District's statute prohibiting the carrying of a pistol without a license violates the Second Amendment because it amounts to "an outright ban on the carrying of pis-

tols."[8] Appellant claims, in other words, that, at the time of his arrest, there was no valid statute prohibiting his conduct.

*Heller*, of course, did not "invalidate any of the District's *individual* gun control laws[.]" *Smith v. United States*, 20 A.3d 759, 764 (D.C.2011) (emphasis in *Smith*). Moreover, "[i]n a number of [recent] cases[,] . . . this court has rejected claims that the CPWL statute is unconstitutional on its face." *Riddick v. United States*, 995 A.2d 212, 221–22 (D.C.2010) (citing *(Manuel) Brown v. United States*, 979 A.2d 630, 638–39 (D.C.2009); *Howerton v. United States*, 964 A.2d 1282, 1288 (D.C.2009); and *Little v. United States*, 989 A.2d 1096, 1100 (D.C.2010)). And, we have just held that the statute is not unconstitutional as applied to appellant's conduct.

■ Nevertheless, appellant argues that the statute sweeps too broadly because it is "indifferent to the manner in which [an] unlicensed pistol is carried" in public ("whether 'openly or concealed' "). There are two principal problems with this claim. First, rather than exhibiting indifference, the wording of the CPWL statute plainly prohibits the carrying of concealed weapons. See note 8, *supra*. Second, except in limited circumstances not present here, an appellant may not challenge a statute by arguing that it could not be constitutionally applied to other defendants, differently situated. *See Sabri v. United States*, 541 U.S. 600, 609–10, 124 S.Ct. 1941, 158 L.Ed.2d 891 (2004) ("Facial challenges of this sort are especially to be discouraged"

---

8. The statute Mr. Gamble violated provides: "No person shall carry within the District of Columbia either openly or concealed on or about their person, a pistol, without a license issued pursuant to District of Columbia law, or any deadly or dangerous weapon capable of being so concealed." D.C.Code § 22–4504(a). The penalty varies for different violations of § 22–4504(a). For example, "[a] person who violates this section by carrying a pistol, without a license . . . in a place other than the person's dwelling place, place of business, or on other land possessed by the person, shall be fined not more than $5,000 or imprisoned for not more than 5 years, or both[.]" D.C.Code § 22–4504(a)(1). The indictment in this case specifically alleged that appellant carried the weapon "in a place other than his dwelling place, place of business or on other land possessed by him."

because they "call for relaxing familiar requirements of standing, to allow a determination that the law would be unconstitutionally applied to different parties and different circumstances from those at hand."); *see, e.g., id.* at 609, 124 S.Ct. 1941 (recognizing that "facial attacks alleging overbreadth" do not necessarily use that term); *German v. United States,* 525 A.2d 596, 604–05 (D.C.1987) ("On the overbreadth claim, . . . German does not have standing to assert the rights and interests of third parties who might be unconstitutionally affected by the statute."). Although not denominated as such, appellant's attack "amounts to the constitutional 'overbreadth' argument that we have rejected in previous cases challenging [the CPWL] statute[ ]" under the Second Amendment. *Wooden v. United States,* 6 A.3d 833, 837 n. 26 (D.C.2010) (citing *(Manuel) Brown,* 979 A.2d at 638–40, and *Plummer,* 983 A.2d at 339–40).[9]

The statute indisputably prohibits carrying a pistol openly (on or about one's person) without a license. But we need not determine whether that portion of the statute violates the Second Amendment. Under the established norms of adjudication just discussed, the validity *vel non* of the *open* carry provision would not affect Mr. Gamble's conviction for carrying a *concealed* weapon.

There is a similar, but independent, rationale for rejecting appellant's broad challenge to the statute. D.C.Code § 45–201(a) (2001) adopts a broad principle of severability to be employed "if any provision of any act . . . or the application thereof to any person or circumstance is held to be unconstitutional. . . ."[10] This statute embodies "a well-established rule of statutory construction . . . 'to save and not to destroy' legislation, since 'invalid provisions are to be severed unless it is evident that without those provisions, the legislature would not have enacted the remaining provisions.'" *RDP Development Corp. v. District of Columbia,* 645 A.2d 1078, 1082–83 n. 18 (D.C.1994) (quoting *Gary v. United States,* 499 A.2d 815, 821 (D.C.1985) (en banc)).[11]

---

**9.** Similarly, Mr. Gamble did not allege below, nor does the record establish, that he carried the pistol (and extra ammunition) outside his home for purposes of legitimate self-defense. *See Smith,* 20 A.3d at 764 ("Even per appellant's interpretation of *Heller,* that Second Amendment rights extend beyond the hearth and home and that one can carry a weapon in case of confrontation, there is no indicia in the record that appellant was traveling with his loaded firearm [in a car on a public street] to defend himself or was facing some imminent confrontation.").

**10.** D.C.Code § 45–201(a) (2001) states:
(a) Except as provided in subsection (b) of this section, if any provision of any act of the Council of the District of Columbia or the application thereof to any person or circumstance is held to be unconstitutional or beyond the statutory authority of the Council of the District of Columbia, or otherwise invalid, the declaration of invalidity shall not affect other provisions or applications of the act which can be given effect without the invalid provision or application, and to this end the provisions of each act of the Council of the District of Columbia are deemed severable.

Section 45–201(b) provides that the Council has authority to include a non-severability clause. The CPWL statute does not contain a non-severability clause.

**11.** We need not address the constitutionality of the open carry provision in order to apply the doctrine of severability. Instead, we follow a long judicial tradition of ruling on constitutional questions only when it is necessary to do so. *See Lewis v. Hotel & Restaurant Employees Union, Local 25,* 727 A.2d 297, 301 (D.C.1999) ("The Supreme Court has recognized that . . . courts should generally avoid ruling on constitutional questions unless they have no other choice.") (internal quotation marks and citation omitted); *Olevsky v. District of Columbia,* 548 A.2d 78, 81 (D.C.1988) ("The practice of avoiding constitutional issues if it is reasonably possible to do so is predicated on a fundamental rule of judicial

Here it is far from evident that the legislature would have chosen not to prohibit the carrying of concealed pistols if it were forbidden to outlaw the open carrying of such firearms. In fact, "[t]he forerunner of the present District of Columbia law prohibiting the carrying of dangerous weapons[,]" *United States v. Pritchett*, 152 U.S.App.D.C. 307, 308–09, 470 F.2d 455, 456–57 (1972), began as a ban on carrying concealed weapons. D.C.Code § 855 (1901) codified an 1892 statute which "prohibit[ed] the carrying of a concealed deadly or dangerous weapon 'about' the person." *(Pomeroy) Brown*, 58 App.D.C. at 312, 30 F.2d at 475 (reviewing § 855); [12] *see Pritchett*, 152 U.S.App.D.C. at 308–10, 470 F.2d at 456–58 (reviewing historical development of D.C.Code § 22–3204, a predecessor of our current statute). Later enactments added the restriction on open carrying, but there is no reason to conclude that, by expanding the coverage of the statute, the legislature abandoned, or became "indifferent to," its original purpose.[13] *See (Pomeroy) Brown*, 58 App. D.C. at 312, 30 F.2d at 475 ("the purpose of [the legislature] in the enactment of this law" was to protect the public "from the menace of concealed 'deadly or dangerous' weapons"). We therefore properly confine our analysis to the legislative prohibition underlying appellant's conviction. To reiterate, Mr. Gamble's conviction for carrying a concealed pistol without a license on the streets of the District of Columbia did not violate his constitutional right to keep and bear arms.

## C. A Remand Is Not Appropriate

According to appellant, if "the Second Amendment does protect [his carrying of a] handgun[ ] outside the home, [ ] then under *Plummer*, application of the handgun ban would violate [his] Second Amendment right so long as he would have been otherwise eligible to obtain a license to carry his pistol. In such a case, Mr. Gamble would be entitled to a *Plummer* remand to determine that question."[14] There is, however, no predicate for a remand in this case because we have held that the Second Amendment does not pro-

restraint, which is perhaps more deeply rooted than any other doctrine of constitutional adjudication."). Even if we assume, without deciding, that a ban on the open carrying of pistols violates the Second Amendment, that would not invalidate appellant's conviction for carrying a concealed weapon.

**12.** Section 855 directed that

any person who shall within the District of Columbia have concealed about his person any deadly or dangerous weapon, or who shall carry openly any such weapon, with intent to unlawfully use the same, shall be fined not less than fifty dollars nor more than five hundred dollars, or be imprisoned not exceeding one year, or both.

*(Pomeroy) Brown*, 58 App.D.C. at 312, 30 F.2d at 475.

**13.** To the contrary, the legislative history indicates that the restriction on open carrying was added to address concerns that individuals were successfully circumventing the concealed carry statute by simply displaying their weapons whenever a law enforcement officer appeared. H. COMMITTEE ON THE DISTRICT OF COLUMBIA, 78TH CONG., 1ST SESS., HEARING ON H.R. 2866 (June 21, 1943); H. SUBCOMMITTEE ON THE JUDICIARY OF THE COMMITTEE ON THE DISTRICT OF COLUMBIA, 78TH CONG., 1ST SESS., HEARING ON H.R. 2866 (Oct. 4, 1943).

**14.** *Plummer* held that unless a defendant was disqualified from registering a weapon for constitutionally permissible reasons, the court could not convict him for possessing an unregistered handgun in his home when the District's unconstitutional ban made such registration impossible. 983 A.2d at 325. Since the issue of whether Plummer "could have successfully obtained a registration certificate prior to the imposition of charges" could not be resolved on the existing record, we remanded the case for a hearing on that question. *Id.*

tect appellant's carrying of a concealed weapon in public.

### IV. Conclusion

In sum, there is no Second Amendment right to carry and possess a concealed firearm in public. Consequently, the CPWL statute was constitutionally applied to Mr. Gamble's carrying of an unlicensed semi-automatic pistol in his jacket pocket on the streets of the District of Columbia. The judgment of conviction is hereby

*Affirmed.*